[No. 56459–1. En Banc. July 5, 1990.]

*In the Matter of the Detention of*
LONNIE SWANSON, *Petitioner.*

*Patrick M. Long* of *Seattle–King County Public Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Katharine Wilcox, Deputy,* for respondent Harborview Medical Center.

DURHAM, J.—After being held on a 72–hour emergency detention, Lonnie Swanson was brought before a judge to determine if probable cause existed to commit him for further treatment. At that time, Swanson moved for dismissal, claiming that the statutory time limit for the hearing had expired. His motion was denied, and he was committed for up to 14 days of involuntary treatment. Swanson appealed and respondent Harborview Medical Center (Harborview) joined in requesting that this court define the time parameters of the civil commitment statute.

Although technically moot, we agreed to decide this case because it involves matters of continuing and substantial public interest. We hold that dismissal is not required under the facts of this case. We also take this opportunity to clarify the time at which detention begins.

On November 19, 1987, at approximately 11 a.m., Lonnie Swanson arrived at the Harborview Medical Center Emergency Room. He was seen by Joan Clement, the senior social worker on duty, who found him to be agitated and hostile. He refused all psychiatric treatment. Based on his behavior, Ms. Clement concluded that, in her opinion, Swanson was paranoid, psychotic, a threat to himself and to others, and in need of inpatient psychiatric treatment. Dan Roscoe, a King County designated mental health professional, evaluated Swanson and determined that, as a result of a mental disorder, Swanson was a danger to himself and gravely disabled. Roscoe then prepared a petition for initial detention. He served Swanson with a copy of the petition, a notice and statement of rights and notification of attorney, and a notice of emergency detention. Roscoe indicated that he served Swanson at 2:50 p.m. that day. Swanson was detained at Harborview Medical Center. The completed evaluation and treatment facility notice of acceptance indicates that Swanson was "detained at facility at 1630" (4:30 p.m.). The notice and statement of rights, which was given to Swanson, stated in part that he would

> be released within a period of 72 hours, excluding Saturdays, Sundays, and holidays, unless a judicial hearing is held. *The hearing must be held within 72 hours after your initial detention to determine* whether there is probable cause to detain you for up to an additional 14 days.

(Italics ours.)

At 3:30 p.m. on Monday, November 23, 1987, a petition for 14-day involuntary treatment was filed, alleging that Swanson was a danger to others and gravely disabled. Swanson's case was placed on the calendar for Tuesday, November 24. His attorney was present and the court began hearing the calendar at 9:30 a.m. When Swanson's particular hearing started at 4:50 p.m., his attorney moved to have the petition dismissed because the 72-hour period had expired and, as a result, the court had no jurisdiction to hear Swanson's case. Swanson's attorney renewed his motion prior to the court's ruling. The court denied the

motion. At the conclusion of the hearing, the court found that Swanson, as a result of a mental disorder, presented a likelihood of serious harm to others. The court ordered Swanson to undergo inpatient involuntary treatment for up to 14 days.

In denying the motion, the court did not make any findings of fact as to when Swanson was served or detained.[1] The court stated that the "72 hour rule has to be read in the context of the Court's calendar" and "the common sense ruling of law would say that as long as [the probable cause hearing is] held during that day within which the 72 hours falls [it] is adequate, particularly where we're [sic] with a calendar the size that we have."

Swanson appealed the trial court's denial of his motion to dismiss. He is not contesting the substantive factual basis for the 14–day order. The Court of Appeals dismissed the appeal as moot in an unpublished opinion filed August 7, 1989. This court granted Swanson's petition for review.

## MOOTNESS

As noted above, this case is technically moot because the detention that is the subject of this appeal has long since ended. Thus, this court cannot provide the basic relief that appellant originally sought. *In re LaBelle,* 107 Wn.2d 196, 200, 728 P.2d 138 (1986); *Dunner v. McLaughlin,* 100 Wn.2d 832, 838, 676 P.2d 444 (1984); *In re Cross,* 99 Wn.2d 373, 376–77, 662 P.2d 828 (1983). However, the parties request that we decide this case on its merits because the issues presented are of continuing public interest and there is a need for guidance in applying the statutory civil commitment scheme. We agree.

■ This court may decide a moot case if it involves matters of continuing and substantial public interest. We consider the following criteria in determining whether or not a sufficient public interest is involved:

---

[1]Harborview neither contested the assertion that the 72–hour period had lapsed nor offered any evidence as to the time of initial detention.

(1) the public or private nature of the question presented; (2) the desirability of an authoritative determination which will provide future guidance to public officers; and (3) the likelihood that the question will recur.

*McLaughlin,* at 838.

This court has recognized that "'the need to clarify the statutory scheme governing civil commitment is a matter of continuing and substantial public interest.'" *LaBelle,* at 200 (quoting *McLaughlin,* at 838). Additionally, the fact that both parties are requesting review in this case indicates that there is need for guidance in this area and that these issues are likely to re–occur. Therefore, although technically moot, we decide this case because it involves issues of substantial and continuing public interest. In so doing, we in no way detract from the holding in *Hart v. Social & Health Servs.,* 111 Wn.2d 445, 759 P.2d 1206 (1988).

## 72–HOUR LIMITATION

The parties agree that the trial court had both personal and subject matter jurisdiction in this case up until the 72–hour period expired. They also agree that Swanson's case was on the court calendar, which began within the 72–hour period, but that his particular hearing began after that period had lapsed.

Harborview argues that substantial compliance with the statute is sufficient to avoid dismissal. They point out that, according to their calculations, Swanson's hearing took place only 20 minutes late.[2] Conversely, Swanson contends that, because our civil commitment statute must be strictly construed, the trial court had no jurisdiction other than to dismiss his case. Under Swanson's construction, the petition must be dismissed if any individual hearing is commenced beyond 72 hours, regardless of the reason.

As argued by the parties, this case turns solely on whether the statute requires strict construction or substantial compliance. Our analysis, however, does not end there.

---

[2] Harborview asserts that Swanson's detention began when the hospital admitted him at 4:30 p.m., rather than at 2:50 p.m. when he was served.

In addition to resolving the statutory construction issue, we must also determine when Swanson's hearing began for the purpose of satisfying the statute.

Turning first to the issue of statutory construction, we begin with a review of the applicable statutes. Within the civil commitment statutes, a number of sections expressly limit the initial detention to 72 hours:

[A person may] be taken into emergency custody in an evaluation and treatment facility for not more than seventy–two hours as described in RCW 71.05.180.

RCW 71.05.150(2).

If the evaluation and treatment facility admits the person, it may detain him for evaluation and treatment for a period not to exceed seventy–two hours . . .

RCW 71.05.180.

Whenever any person is detained for evaluation and treatment pursuant to this chapter, [the person] . . . shall be advised . . . that unless the person is released or voluntarily admits himself or herself for treatment within seventy–two hours of the initial detention:

(a) That a judicial hearing in a superior court . . . shall be held not more than seventy–two hours after the initial detention to determine whether there is probable cause to detain the person . . . for up to an additional fourteen days . . .

RCW 71.05.200(1).

A person who has been detained for seventy–two hours shall no later than the end of such period be released, unless referred for further care on a voluntary basis, or detained pursuant to court order for further treatment as provided in this chapter.

RCW 71.05.210.

If a petition is filed for fourteen day involuntary treatment or ninety days of less restrictive alternative treatment, the court shall hold a probable cause hearing within seventy–two hours of the initial detention of such person as determined in RCW 71.05.180, as now or hereafter amended. . . .

RCW 71.05.240.

 The statutory scheme clearly contemplates an initial detention period not to exceed 72 hours (excluding weekends and holidays), with a judicial hearing required before any more lengthy commitment. Moreover, on their

face, the statutes are unambiguous. "Where statutory language is plain and unambiguous, a statute's meaning must be derived from the wording of the statute itself." *Human Rights Comm'n v. Cheney Sch. Dist. 30,* 97 Wn.2d 118, 121, 641 P.2d 163 (1982). It is also significant that all of the statutory time periods before the probable cause hearing are stated in hours, while those after the hearing are stated in days.[3] "[W]here the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent." *United Parcel Serv., Inc. v. Department of Rev.,* 102 Wn.2d 355, 362, 687 P.2d 186 (1984). If the Legislature had intended the initial detention period to be measured in days, rather than hours, it would have said so. Furthermore, the distinction is reasonable because the probable cause hearing is the first time that an impartial decisionmaker must determine if the legal grounds for commitment are satisfied.

Strict construction is also supported by Washington case law. In *In re Eastman,* 151 Wash. 321, 275 P. 724 (1929), this court vacated an order committing a woman to a state custodial school without the appointment of a guardian or notice to relatives or friends as required by law. The court stated:

> "Where a statute prescribes a certain method of procedure to determine whether persons are insane, such inquiries must be conducted in the mode prescribed, and the statute regulating such proceedings must be followed strictly."

*Eastman,* at 322 (quoting 14 R.C.L. [Ruling Case Law], at 556–57 (1916)). Additionally, statutes involving a deprivation of liberty are to be construed strictly. *In re Cross,* 99 Wn.2d 373, 379, 662 P.2d 828 (1983).

---

[3]In addition to the sections already noted, RCW 71.05.050 allows hospital emergency room personnel to detain a person for 6 hours while waiting for a designated mental health professional to evaluate the person for possible detention. Similarly, persons brought to an evaluation and treatment center by a peace officer may be held for up to 12 hours while awaiting an evaluation. RCW 71.05-.150(5). Conversely, commitment beyond the initial 72–hour detention is in terms of days. *See, e.g.,* RCW 71.05.260 (14–day commitment); RCW 71.05.320 (90–day commitment).

Thus, strict construction of the civil commitment statutes is required both by the language of those statutes and our case law interpreting them. To have complied with the statute's requirements, Swanson's hearing must have begun before the 72–hour period had lapsed. Accordingly, we must next determine when that hearing began. Stated simply, we must decide if the 72–hour limit was met when the calendar began at 9:30 a.m. or when Swanson's individual proceeding began at 4:50 p.m.

There is nothing in the language of the statute that defines when a hearing begins for the purpose of satisfying the time limitations. Nor is there any Washington case law interpreting the civil commitment statute or similar limitation statutes in this context.[4] We have also been unable to find any cases on point, in the civil commitment context or otherwise, in other jurisdictions.

■ It is essential to keep in mind the need to satisfy the intent of the statute while avoiding absurd results. As stated in RCW 71.05.010, that statute is intended, in part:

> (1) To end inappropriate, indefinite commitment of mentally disordered persons and to eliminate legal disabilities that arise from such commitment;
> (2) To provide prompt evaluation and short term treatment of persons with serious mental disorders;
> (3) To safeguard individual rights;
> (4) To provide continuity of care for persons with serious mental disorders;
>
> . . . .
>
> (7) To protect the public safety.

---

[4] There is no Washington case law defining when a probable cause hearing in any context has begun for the purpose of meeting a statutory time limit that is stated in hours. For example, the rules setting forth time limits for the detention or setting of conditions for persons prior to their preliminary appearance on criminal charges are written in terms of hours. CrR 3.2A(c); CrRLJ 3.2.1(c). Indeed, the time period involved, like that in the present case, is 72 hours, excluding Saturdays, Sundays and holidays. However, there are no Washington cases interpreting the relevant section under either set of rules. Similarly, RCW 26.44.056 allows Child Protective Services to take a child into protective detention or custody for up to 72 hours, excluding Saturdays, Sundays, and holidays. Again, there is no Washington case law on point.

Furthermore, "[i]t is the intent of the legislature that chapter 71.05 RCW as amended by this 1979 act be carefully construed to accomplish the purposes stated in RCW 71.05.010 and hereby reaffirmed." (Reviser's note omitted.) RCW 71.05.015.

The goals of ensuring continuity of care and protecting the public are decidedly not met if dismissal of properly filed and factually supported petitions turns on the inherent unpredictability of a court's calendar, rather than on the court's determination of whether or not legal grounds for commitment exist. Conversely, a determination that the 72–hour requirement is satisfied when the court calendar begins and the parties' attorneys are ready to proceed will fulfill the stated purposes of ending inappropriate, indefinite commitments, providing prompt evaluation and short term treatment, and safeguarding individual rights. These purposes are served, and will continue to be served, by the statutory requirement that commitments be based on adequate legal grounds stated in factually supported petitions filed in a timely fashion.

We are also aware of the need to avoid placing the impossible burden on the trial court of predicting how long any given calendar will last or exactly when a particular case will be heard. As Harborview said at oral argument, there are numerous ways in which the calendar's time restraints are buffeted by the mental instability of the individuals appearing before the court. By its very nature, the calendar is unpredictable. It is easy to visualize a circumstance where a single disruptive patient could cause a significant delay in the hearing process. Thus, even if the court were to do its best to arrange the order of cases to reflect the expiration times, there would be no guaranty that the schedule would move forward according to plan.

In fact, during the pendency of this appeal an attempt has been made to order cases by reference to their expiration times. However, simply ordering the cases chronologically may not solve the problem. Other considerations

impact upon scheduling. For example, adolescents awaiting hearing are given first priority. Second priority is given to those who, if committed, will be going to Western State Hospital so that they can arrive in time to be assessed by staff on the same day. Those persons who will be going to Harborview are given last priority because of close proximity of that facility to the court. It is also reasonable to assume that parties may wish to hear the case of an especially disruptive person as early as possible to reduce the effect of that person's agitated state on others awaiting hearing. There are simply too many variables affecting the calendar for scheduling the hearings by expiration time to be a workable solution to ensure that otherwise valid and factually supported petitions will not be dismissed solely because of the unpredictability of the proceedings.[5]

Swanson's suggestion that a request for a continuance would solve the problem is unpersuasive. He argues that "all it would have taken would be a minute of the Court's time to come in and ask for a continuance, which the Court, I'm sure, would have granted in this case."[6] While that may be so if one looks at Swanson's case in isolation, in practice it could ultimately cause more problems than it solves. First, the court would have to guess ahead of time how many cases, and which specific cases, are in danger of not being heard in time to meet the deadline. Furthermore, time would then be spent hearing motions for continuances that may or may not prove to be necessary. Faced with the possible dismissal of an otherwise valid petition, courts will

---

[5]Because the timing of a person's detention is random, it is quite possible to end up with a cluster of individuals who all happen to have their 72–hour period expire within a matter of minutes on the same day. Also, while the court operates on limited hours, a person may be detained at any and all hours of the day or night. Thus, the hearing for a person whose 72 hours expire at 7 o'clock in the evening, must be heard on the same day as a person whose 72 hours expire at 4 o'clock, which again may result in a cluster of cases needing to be heard in a short time period.

[6]Under RCW 71.05.240, Harborview could have sought a continuance of up to 24 hours upon a showing of good cause.

understandably err on the safe side. Thus, in seeking to avoid the impact of unexpected delays, more would be created.

Swanson also argues that dismissal of his case, followed by the immediate refiling of a new 72–hour emergency detention, would have been a better course of action. We disagree. A patient who has been hospitalized, treated, and medicated during the initial detention may exhibit significantly decreased need for emergency detention, which requires a finding that a person "presents an imminent likelihood of serious harm to himself or others, or is in imminent danger because of being gravely disabled". RCW 71.05.150(2).

If Harborview had totally disregarded the requirements of the statute or had failed to establish legal grounds for Swanson's commitment, certainly dismissal would have been proper. Indeed, it would have been required. However, if the intent of the statute is to be fulfilled and absurd results are to be avoided, dismissal cannot turn on the vagaries of scheduling, especially in these unpredictable and sensitive proceedings.

In light of the clear language of the statute and Washington case law concerning statutes impacting liberty interests, the time limits at issue must be strictly construed. However, we hold that, in the civil commitment context, a hearing begins when the court calendar begins and the parties' attorneys are ready to proceed. We take care to note, however, that our holding is expressly limited to this context, recognizing that it rests upon, and is guided by, the stated intent of the civil commitment statute.

## CALCULATION OF DETENTION PERIOD

The parties also disagree as to when the 72–hour period begins.[7] We take this opportunity to clarify this issue.

---

[7]The trial court did not make any findings of fact regarding the time that Swanson was detained or accepted at Harborview Medical Center. There was no evidence given by either party at the probable cause hearing as to when Swanson

Swanson argues that the 72–hour period begins when a facility accepts a person based on a petition for initial detention, while Harborview asserts that it does not begin until a facility actually admits a detained person. Using Harborview's method of computation, "travel time" is not included. For example, if a person is originally detained in Cashmere and later transported to Eastern State Hospital, the trip could take "several hours." According to the construction urged by Harborview, the 72–hour period would not begin to run until the person actually arrived at the hospital. This would necessarily leave an unspecified period of time when the person is neither detained nor free to leave.[8] The applicable statutes clearly do not support such a result.

RCW 71.05.240 reads in part as follows:

> If a petition is filed for fourteen day involuntary treatment or ninety days of less restrictive alternative treatment, the court shall hold a probable cause hearing within seventy–two hours of the initial detention of such person as determined in RCW 71.05.180, as now or hereafter amended.

■ Thus, we turn to RCW 71.05.180 to determine when the initial detention occurs for the purpose of defining the 72–hour period. RCW 71.05.180 expressly states that:

> If the evaluation and treatment facility admits the person, it may detain him for evaluation and treatment for a period not to exceed seventy–two hours from the time of *acceptance* as set forth in RCW 71.05.170. The computation of such seventy–two hour period shall exclude Saturdays, Sundays and holidays.

(Italics ours.) We next turn to RCW 71.05.170, which reads in part as follows:

> Whenever the designated county mental health professional petitions for detention of a person . . . the facility providing

---

was detained. The trial court appeared to accept the fact that the 72–hour period had expired.

[8]Harborview refers specifically to travel time as an example of a time period which should not be counted in measuring the 72–hour period. However, under Harborview's interpretation, any time after a person is served with a petition and before that person arrives at the facility would not be counted, regardless of the length of time or the reason for any delay.

seventy–two hour evaluation and treatment *must immediately accept on a provisional basis the petition and the person.* The facility shall then evaluate the person's condition and admit or release such person in accordance with RCW 71.05.210.

(Italics ours.) Therefore, under RCW 71.05.170, a facility must immediately accept a person when the designated county mental health professional petitions for detention. It is this time of acceptance that is referred to in RCW 71.05.180 as beginning the 72–hour period, not the detainee's time of arrival at, or admittance to, the facility. This reading is further supported by MPR 2.2(e), which reads in part that "[t]he 72–hour period begins when the person is provisionally accepted at the evaluation and treatment facility". Thus, we hold that the 72–hour period begins upon a facility's immediate provisional acceptance of a petition and person for detention.

## CONCLUSION

In sum, we affirm the trial court's denial of Swanson's motion to dismiss. We hold that, in the context of civil commitment, a hearing begins when the court calendar begins and the parties' attorneys are ready to proceed. Further, we hold that the 72–hour period begins when the person is provisionally accepted at the evaluation and treatment facility, not when they are actually admitted.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, SMITH, and GUY, JJ., concur.

After modification, further reconsideration denied December 5, 1990.