7 P.3d 878 (2000)
In re the Interest of N.M.
No. 43924-3-I.
Court of Appeals of Washington, Division 1.
September 11, 2000.
*879 Carol Bennett-Bertrand, Jana Heyd, Seattle, for Appellant.
Andrew Mackie, Renton, for Respondent.
ELLINGTON, J.
The legislature intended detention for a limited period of time as a sanction to be available for contempt in juvenile status offense cases. We hold that the statutory authorization for "up to seven days" is a maximum detention sanction not subject to aggregation in any one proceeding.

Facts
N.M. was found to be an at-risk youth (ARY). Pursuant to RCW 13.32A.196, the court ordered the 16-year-old to obey a curfew, comply with outpatient drug and alcohol treatment, attend AA meetings, abstain from possession or use of drugs and alcohol, and refrain from verbal abuse.
Less than two weeks later, N.M.'s parents filed a contempt motion, alleging that N.M. violated his curfew, refused to attend AA meetings, verbally abused his mother, and came home "stoned." The court found that N.M. had violated the conditions of his ARY supervision on five separate occasions, and held N.M. in contempt. In lieu of 35 days of detention (seven days for each violation), the court imposed 14 days of electronic home monitoring. N.M. was permitted to purge the contempt by following the court's previous orders, or voluntarily checking into inpatient treatment.[1]
N.M. moved for revision, arguing that a juvenile court could impose no more than seven days of detention for violating a dispositional order.
The revision judge granted N.M.'s motion, but on different grounds, holding that the juvenile contempt statutes, as amended in 1998, were unconstitutional because while they labeled all contempt as "remedial," the amended statutes in fact authorized only a punitive sanction, and the juvenile court's imposition of a 14-day determinate sentence therefore violated N.M.'s criminal due process rights.
N.M. argues on appeal that the court on revision erred in its characterization of the amended statute. He reiterates his assertion that the juvenile contempt statutes authorize imposition of a maximum of seven detention days as a coercive sanction for violation of a dispositional order.

Discussion
1. Mootness
The issues presented here are technically moot. We will nonetheless reach the merits, because the questions involve matters of continuing and substantial public interest.[2]
*880 2. Constitutionality of 1998 Amendments
In 1998, the Washington State Legislature amended the Becca Bill[3] to expressly characterize as "remedial"[4] all detention sanctions for violations of ARY, child in need of services (CHINS), was amended to add subsection (e), and truancy dispositional orders.[5] The general contempt statute, RCW 7.21.030(2), which provides:
(2) If the court finds that the person has failed or refused to perform an act that is yet within the person's power to perform, the court may find the person in contempt of court and impose ... the following remedial sanctions:
....
(e) In cases under chapters 13.32A [CHINS, ARY], 13.34 [dependency], and 28A.225 [truancy] RCW, commitment to juvenile detention for a period of time not to exceed seven days. This sanction may be imposed in addition to, or as an alternative to, any other remedial sanction authorized by this chapter. This remedy is specifically determined to be a remedial sanction.[6]
RCW 13.32A.250, which governs ARY and CHINS cases, was also amended to read:
(2) Failure by a party to comply with an order entered under this chapter is a civil contempt of court as provided in RCW 7.21.030(2)(e), subject to the limitations of subsection (3) of this section.
(3) The court may impose remedial sanctions including a fine of up to one hundred dollars and confinement for up to seven days, or both for contempt of court under this section.[7]
In addition, the legislature made the following findings:
The legislature finds that an essential component of the children in need of services, dependency, and truancy laws is the use of juvenile detention. As chapter 7.21 RCW is currently written, courts may not order detention time without a criminal charge being filed. It is the intent of the legislature to avoid the bringing of criminal charges against youth who need the guidance of the court rather than its punishment. The legislature further finds that ordering a child placed in detention is a remedial action, not a punitive one. Since the legislature finds that the state is required to provide instruction to children in detention, use of the courts' contempt powers is an effective means for furthering the education and protection of these children. Thus, it is the intent of the legislature to authorize a limited sanction of time in juvenile detention independent of chapter 7.21 RCW for failure to comply with court orders in truancy, child in need of services, at-risk youth, and dependency cases for the sole purpose of providing the courts with the tools necessary to enforce orders in these limited types of cases because other statutory contempt remedies are inadequate.[8]
The first issue presented here is whether the revision court erred in holding that the juvenile contempt statutes, as amended in 1998, are unconstitutional. We recently resolved this issue in In re Interest of M.B., 101 Wash.App. 425, 3 P.3d 780 (2000) and held the statutes constitutional so long as the juvenile courts supply the requisite due process safeguards to ensure the sanctions are remedial in nature.[9]
As the revision court here correctly noted, a punitive contempt sanction does not become remedial just because it is called remedial *881 by the legislature; these distinctions have constitutional significance.[10] But it is clear the 1998 legislature intended to ensure that detention remains available to juvenile courts as a remedial sanction for contempt in status offense cases. As we held in M.B., the legislative intent can be given effect without constitutional violation if courts supply the necessary due process safeguards:
So long as the required purge condition is supplied by the court, both legislative intent and the requirements of due process are satisfied.
This is not a strange or even a strained approach.... Indeed, we note that under the general contempt statute, no mention is made of purge conditions, yet courts routinely impose purge conditions to render the use of the incarceration sanction properly coercive.[11]
The statutes, thus applied, are not unconstitutional.
3. Stacking
The second issue presented here was not before us in M.B.: Did the juvenile court err by "stacking," or aggregating, detention sanctions for multiple violations? N.M. was found in contempt for five separate violations of the dispositional order. Although the juvenile court commissioner did not impose 35 days of detention, she concluded that she had the statutory authority to do so, and instead ordered 14 days of electronic home monitoring. N.M. argues that neither RCW 13.32A nor RCW 7.21.030 authorizes the imposition of aggregate detention sanctions in a single contempt proceeding.[12] We agree.
The construction of a statute is a question of law and is reviewed de novo.[13] Ambiguities in the statute must be resolved in accordance with the intent of the legislature.[14]
Under the general contempt statute, in ARY, CHINS, truancy, and dependency cases, a court may impose a sanction of "commitment to juvenile detention for a period of time not to exceed seven days."[15] The statute governing ARY and CHINS proceedings also provides that remedial sanctions for contempt may include "confinement for up to *882 seven days."[16] Each of these provisions thus clearly contemplates a maximum of seven days in detention in status offense contempt cases.[17] It is less clear, however, whether the seven-day maximum is "per violation" or "per contempt finding." A typical ARY or CHINS dispositional order often imposes several requirements,[18] and it is not uncommon for a child to violate more than one condition, or commit multiple violations of a single condition. This leads, in short order, to many days' potential detention if each violation is treated as a separate basis for a seven-day sanction.
We resolve this ambiguity by looking to legislative intent. When the 1998 amendments to the juvenile contempt provisions were adopted, the legislature gave an unusually clear statement of its intent in this regard: "[I]t is the intent of the legislature to authorize a limited sanction of time in juvenile detention [for contempt in status offense cases.]"[19] Keeping in mind the legislative intent that detention be a limited contempt sanction, we note that for juvenile offenders, "up to 30 days" in detention is the presumptive first-offender punishment for several relatively serious criminal offenses, such as second degree arson, residential burglary, or theft of a firearm.[20] In addition, juvenile offenders who violate the terms of their supervision may be punished by up to 30 days in detention, but courts are not permitted to aggregate the detention time for multiple violations to exceed 30 days.[21]
While we recognize the limited usefulness of a comparison to detention imposed for punishment purposes, we nevertheless find it instructive. If the legislature has authorized a maximum of 30 days of punitive detention for serious criminal conduct by juveniles, it is unlikely the legislature intended to authorize significantly longer remedial detention periods for contumacious conduct by juveniles.
In addition, as the revision court here noted, civil contempt is a status; once the juvenile is in contempt, "th[e] status is legally present whether there is one or several violations of the court's order. The number of violations could individually be sanctioned only as a matter of punishment." We agree with this observation.
We conclude that when the legislature authorized a limited remedial sanction for non-criminal contempt, the legislature did not intend to authorize the maximum detention sanction for each and every separate violation. Accordingly, we hold that RCW 7.21.030(2)(e) and RCW 13.32A.250(3) do not authorize courts to aggregate detention sanctions for multiple violations of a dispositional order. A properly coercive sanction may include confinement for a maximum of seven days with an opportunity to purge. No child may be held longer than seven days even if the purge condition is unsatisfied.
The sanction imposed on N.M. impermissibly exceeded the statutory maximum.
BAKER, J. and KENNEDY, J., concur.
NOTES
[1] The commissioner stated:

I am finding contempt on the following ... violations. There is more than one contempt finding.... [N.M.] is in contempt for violating curfew on 9/10; refusing to go to AA meetings, I'm considering that one contempt although it could be viewed as several contempts since he hasn't gone to any of them; staying out all night on the 11th; threatening his mother; coming home stoned. That's one, two, three, four, five ... separate contempts which, by my count, gives me the ability to impose 35 days. I'm imposing 14 days on electronic home monitoring. [N.M.] can purge the contempt by following previous orders ... including AA meetings or voluntarily checking into inpatient treatment.
[2] See In re Interest of M.B., 101 Wash.App. 425, 432-33, 3 P.3d 780, (2000) (citing In re Detention of Swanson, 115 Wash.2d 21, 24-25, 804 P.2d 1 (1990)).
[3] Laws of 1995, ch. 312. For an overview of the Becca Bill, see M.B., at 433-36, 3 P.3d 780.
[4] A "remedial" sanction is imposed to coerce compliance with a court order. A "punitive" sanction is imposed to punish a past contempt of court. Punitive sanctions require criminal due process protections. M.B., at 437-40, 3 P.3d 780 (citations omitted).
[5] Laws of 1998, ch. 296, §§ 36-39; M.B., at 442-43, 3 P.3d 780.
[6] Laws of 1998, ch. 296, § 36 (emphasis added); M.B., at 442-43, 3 P.3d 780.
[7] Laws of 1998, ch. 296, § 37 (emphasis added); M.B., at 442-43, 3 P.3d 780.
[8] RCW 7.21.030, "Findings-Intent-1998 c 296 §§ 36-39" (emphasis added); M.B., at 443-44, 3 P.3d 780.
[9] M.B., at 446, 3 P.3d 780.
[10] We stated this same premise in M.B.:

The character of a sanction does not change simply because the legislature changes its label. As the U.S. Supreme Court has observed, "the labels affixed either to the proceeding or to the relief imposed under state law are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law." Rather, the nature of the sanction as criminal or civil derives "from ... the character of the relief itself."
M.B., at 445-46, 3 P.3d 780 (quoting Hicks v. Feiock, 485 U.S. 624, 631, 636, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988)).
[11] M.B., at 446-47, 3 P.3d 780 (citations omitted). In this regard, we note that the purge condition imposed on N.M. does not satisfy the rule set forth in M.B.:

[W]e hold that when a CHINS, ARY, or truant youth is in contempt, and the record shows that the child contemnor's mere promise to comply with the original court order is demonstrably unreliable, the court may impose the statutory detention sanction so long as the court establishes a meaningful purge condition that serves remedial aims, can be fulfilled by the child, and is reasonably related to the cause or nature of the contempt. Upon performance of the condition, the child must be released.
M.B., at 451-52, 3 P.3d 780.
The purge requirement here ("following previous orders") does not provide N.M. with a means by which he can comply and be "released" from home detention. Without more specific direction, or a specific time frame for the purge requirement, N.M. does not hold the keys of his prison in his own pocket. See M.B., at 438-39, 3 P.3d 780 (citations omitted).
[12] Stacking is not practiced in all jurisdictions in Washington. In March 1999, the Governor's Juvenile Justice Advisory Committee released a study of the Becca Bill's impact on status offenders in detention. See Donna D. Schram, Study of Status Offenders in Detention (1999) [hereinafter Schram Study]. According to the study, nine of the 15 reporting jurisdictions routinely stacked detention days. One youth was detained for as long as 144 days following a single hearing. Schram Study at 8-9. In In re Interest of A.D.F., 88 Wash.App. 21, 23, 943 P.2d 689 (1997), the court imposed 14 days of detention (seven days each for two violations), but the issue was not raised on appeal.
[13] State v. W.C.F., 97 Wash.App. 401, 403, 985 P.2d 946 (1999).
[14] In re Kindberg, 97 Wash.App. 287, 292, 983 P.2d 684 (1999) (citation omitted).
[15] RCW 7.21.030(2)(e).
[16] RCW 13.32A.250(3).
[17] See M.B., at 446-47, 3 P.3d 780.
[18] RCW 13.32A.196(2) authorizes the court to set conditions of supervision for the child, including requirements that the child attend school regularly, obtain counseling, participate in substance abuse or mental health treatment, and report regularly to DSHS. The court may also order "[a]ny other condition the court deems ... appropriate[.]" RCW 13.32A.196(2)(e). Conditions commonly imposed include requirements to obey a curfew, avoid drugs or alcohol, refrain from smoking, submit to random urinalyses, and refrain from physical or verbal abuse. M.B., at 435-36, 3 P.3d 780.
[19] Laws of 1998, ch. 296, § 35 (emphasis added).
[20] See RCW 13.40.0357.
[21] See RCW 13.40.200(3).