IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re Interest of: | ) | |
| | ) | No. 31549-5-III |
| | ) | |
| | ) | |
| M.D.N. | ) | |
| | ) | UNPUBLISHED OPINION |

SIDDOWAY, C.J. — M.D.N. appeals an order finding her in contempt of conditions imposed by an at-risk youth (ARY) dispositional order. She recognizes that the issue is moot but asks that we hold that the purge condition imposed by the court—that M.D.N. write a 10,000 word essay addressing her violations of the dispositional order—was unreasonable. We reluctantly address the moot issue only because the superior court reportedly sought guidance.

We disagree that some arbitrary word length is automatically beyond the scope of a remedial sanction. We affirm.

FACTS AND PROCEDURAL BACKGROUND

In January 2013, 14-year-old M.D.N.'s mother filed an at-risk youth, or ARY, petition alleging (among other matters) that M.D.N. had been suspended from school on multiple occasions for threatening other kids and being caught with marijuana, had tested positive for marijuana, was verbally abusive to her family, had missed several days of school, was failing many of her classes, would often run away from home for days at a

time, had been taken to the emergency room after threatening suicide, and refused medical treatment and counseling.

After conducting a fact-finding hearing, a court commissioner granted the petition, finding that M.D.N. qualified as an at-risk youth under RCW 13.32A.030 because she had been gone from home for at least 72 consecutive hours without parental consent and was beyond parental control such that her behavior "endangers the health, safety or welfare" of herself or others. Clerk's Papers (CP) at 161. The commissioner ordered M.D.N. to leave the house only with her mother's permission, follow her mother's rules, attend school daily, begin counseling, complete a drug and alcohol evaluation, follow up with recommended treatment, and contact Team Child regarding school. The commissioner verbally warned M.D.N. that if she violated the order, she could be found in contempt and face community service hours or potential jail time. M.D.N. agreed to the conditions.

Two weeks later, M.D.N.'s mother filed a declaration setting forth many ways in which M.D.N. had failed to comply with the ARY order, including talking back, refusing to follow house rules, leaving home stating she would return in 2 hours and then not returning for approximately 30 hours, and missing part days or entire days of school every day for over a week. A contempt hearing was conducted a week later by the same commissioner who had conducted the original ARY hearing. At the time of the hearing, M.D.N.'s mother elaborated on the problems, stating, "I mean it's as if we've never been

2

to Court. As if we've never had a threat, had anything going on. There's been no change, it's just continued." Report of Proceedings at 18-19.

The commissioner entered an order finding M.D.N. in contempt. Because he was not persuaded that M.D.N. intended to comply in the future with his order, he sentenced M.D.N. to two days in detention, to begin immediately. He also provided M.D.N. with the following option for purging the contempt:

> While in detention the youth may seek to be released early by persuading the court through a  10,000  word written essay that the promise is made in good faith. The essay shall explain: (1) how the order was violated, (2) why the youth chose to violate it, (3) what impact that choice had on the youth and others, (4) what actions the court orders require of the youth in the future, and (5) why the court should now believe that the youth will obey the orders in the future.
> Word count shall be listed on each page. When the essay is complete, the youth may ask the court to consider it, and if the court is then persuaded that the promise is in good faith the youth will be released.

CP at 157.

M.D.N.'s contempt hearing ended at approximately 2:20 p.m. on a Thursday. After the hearing she was taken to a detention cell and was provided with paper and pencil with which to work on her essay.

At approximately 10 a.m. the next morning, M.D.N. presented a single-spaced, 16 page essay to the commissioner. Although it fell far short of 10,000 words, M.D.N. told the commissioner that she had stayed up much of the night writing it. M.D.N.'s lawyer objected to the 10,000 word requirement, stating that it was not a meaningful

3

purge condition as it only served to carry M.D.N. through her entire 2 day sentence. The commissioner refused to consider the noncompliant essay and directed M.D.N. to write what she could and come back during the afternoon docket.

At approximately 1:30 p.m., M.D.N. presented an additional 12 pages. The court again refused to consider the essay, which still fell materially short of the 10,000 word requirement.

At approximately 4:30 p.m., M.D.N presented the commissioner with 7 more pages, for a total of 35 pages. M.D.N.'s lawyer also filed a motion to stay the remaining sanction pending revision. The commissioner reviewed the essay, was told by M.D.N.'s lawyer that she estimated it to be around 8,000 words, and then spoke with M.D.N. about the content of her essay. Finding it adequate, he ordered that the contempt was purged.

Although the contempt order was then moot, M.D.N. filed a motion for revision, arguing that the purge condition, which she contended was unreasonable, presented a matter of continuing and substantial public interest. At the hearing on the motion for revision, we are informed that Judge Blaine Gibson indicated he would not hear the motion for revision as the matter was better suited for appeal. This appeal followed.

## ANALYSIS

M.D.N. concedes that this matter is moot. "As a general rule, appellate courts will not decide moot questions or abstract propositions." *In re Interest of Rebecca K.*, 101 Wn. App. 309, 313, 2 P.3d 501 (2000). We may decide a moot case "if it involves

4

matters of continuing and substantial public interest." *In re Det. of Swanson*, 115 Wn.2d 21, 24, 793 P.2d 962, 804 P.2d 1 (1990). We consider the following three criteria in determining whether a sufficient public interest is involved: "'(1) the public or private nature of the question presented; (2) the desirability of an authoritative determination which will provide future guidance to public officers; and (3) the likelihood that the question will recur.'" *Id.* at 24-25 (quoting *Dunner v. McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984)).

We do not believe that a sufficient public interest is presented by this case, because a 14-year-old decision of the Court of Appeals, *In re Interest of M.B.*, 101 Wn. App. 425, 3 P.3d 780 (2000) provides guidance on all of the issues raised. Only because the superior court expressed an interest in our reviewing the case do we address those issues further.

Contempt for violations of ARY dispositional orders is governed by RCW 13.32A.250, which provides that a party's failure to comply is a civil contempt as provided by the general statute on remedial sanctions for contempt, RCW 7.21.030(2)(e), subject to the following limitation:

> The court may impose remedial sanctions including a fine of up to one hundred dollars and confinement for up to seven days, or both for contempt of court under this section.

RCW 13.32A.250(3). In *M.B.*, the court held that the legislature's denomination of "confinement for up to seven days" as a "remedial" sanction was not, by itself, enough to

5

make it remedial rather than punitive. Punitive sanctions are those imposed to punish a past contempt of court for the purpose of upholding the authority of the court, whereas remedial sanctions are those imposed for the purpose of coercing performance when the contempt consists of failure to perform an act that is yet in the person's power to perform. 101 Wn. App. at 438. Punitive sanctions require the filing of an information by the prosecutor and trigger other due process requirements not followed here. *See In re Welfare of K.L.*, 87 Wn. App. 574, 578, 942 P.2d 1052 (1997).

Imposing confinement for up to seven days but subject to a permissible purge condition will qualify as a remedial sanction, however. As recognized in *M.B.*, the legislature's chief objective in characterizing detention as a remedial sanction "was to make detention available as a coercive tool for juvenile courts. This the legislature can clearly do. . . . So long as the required purge condition is supplied by the court, both legislative intent and the requirements of due process are satisfied." 101 Wn. App. at 446.

*M.B.* addressed permissible purge conditions. It recognized that requiring an at-risk youth to promise to comply in the future with conditions imposed by an AYR order is a "first step,"

> [h]owever, where such a promise is demonstrably unreliable (as it may be even on a first contempt), the court is entitled to reject the bare promise as insufficient because unpersuasive, and impose a purge condition aimed at reassuring the court that compliance with the original order will indeed be forthcoming. This condition must meet three requirements. First, it must

6

be designed to serve remedial aims; that is, it must be directed at obtaining future compliance. Second, the condition must be within the power of the child to fulfill. Third, the condition must be reasonably related to the cause or nature of the child's contempt.

*Id.* at 448, 450.

The court in *M.B.* explicitly recognized that "requiring a written explanation to the court as to how the contemnor intends to comply in the future with the portion(s) of the original order that he or she violated in the past" is an appropriate purge condition in juvenile cases. *Id.* at 451.

M.D.N. nonetheless argues that the requirement to write a 10,000 word essay is punitive. In the trial court, her argument was supported by the declaration of a middle school teacher that 10,000 words is well beyond the usual length of writing assignments given to eighth graders. We do not think that a routine writing assignment given to students who are taking other classes during the day is a paradigm for the effort and reflection the commissioner hoped would be invested in M.D.N.'s essay. M.D.N. was making bad choices that created difficulties for her mother and placed her own future at risk. The commissioner could reasonably have intended to impose a condition that, while within M.D.N.'s power to fulfill, would challenge her.

In any event, *M.B.* addresses this issue as well. Responding to the argument that requiring a 25 page paper was punitive because it was "too much to require of a child,"

7

the court said, "We disagree with the proposition that some arbitrary length is automatically beyond the scope of a remedial sanction." *Id.* at 459.

We, too, are unwilling to engage in the line-drawing requested by M.D.N. With several interruptions to present her work-in-progress to the court, M.D.N. was able to write what her lawyer represented was the approximately 8,000 word essay that the commissioner accepted as purging the contempt. "Fashioning a condition that meets the test set forth [in *M.B.*], and deciding whether the condition is satisfied, are matters for the exercise of the court's discretion." *Id.* at 454. We find no abuse of discretion.

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Brown, J.

_____
Korsmo, J.