STEPHENS, J. (dissenting)
¶ 26 I disagree with the majority's narrow view of a district court's authority to enter a *558 domestic violence no-contact order (DVNCO). RCW 10.99.050 authorizes a sentencing court to issue a specialized condition of receiving a suspended or deferred sentence: a stand-alone DVNCO that is enforceable by any court in Washington. Contrary to the majority's reading of RCW 10.99.050, the statute effectively specifies the duration of the stand-alone order by directing that it shall be designated in the DVNCO itself. RCW 10.99.050(3). Accordingly, a DVNCO does not tacitly expire with the conclusion of a suspended sentence. The victim is entitled to protection for the full period of time specified in the order, which cannot exceed five years.
I. A DVNCO Issued under RCW 10.99.050 Stands on Its Own and Is Not Limited to the Length of the Underlying Sentence
¶ 27 A DVNCO can survive independently of the term of probation if the district court retains postconviction jurisdiction over a defendant. In sentencing misdemeanor violations, the district court may suspend all or part of any sentence and fix conditions of such suspension. RCW 3.66.067 -.068. When a defendant commits a domestic violence offense, the district court has the ability to retain jurisdiction over a defendant for up to five years after the imposition of the sentence. RCW 3.66.068(1)(a). District courts possess wide discretion to issue suspended sentences or to impose sentences and conditions with " 'carrot-and-stick incentive[s]' " to promote rehabilitation-a central goal of misdemeanor sentencing. Harris v. Charles , 171 Wash.2d 455, 459, 465, 256 P.3d 328 (2011) (alteration in original) (quoting Wahleithner v. Thompson, 134 Wash. App. 931, 941, 143 P.3d 321 (2006) ). Conditions such as no contact with the victim, engaging in a mental health evaluation, or completing substance abuse treatment serve as reformative incentives in the face of purely punitive punishment-jail time. However, a court may not impose sentencing conditions unless it suspends jail time.
*559 State v. Gailus, 136 Wash. App. 191, 201, 147 P.3d 1300 (2006), overruled on other grounds by State v. Sutherby, 165 Wash.2d 870, 204 P.3d 916 (2009).
¶ 28 This case concerns the proper interpretation of RCW 10.99.050. Statutory interpretation is a legal question reviewed de novo. State v. Costich, 152 Wash.2d 463, 470, 98 P.3d 795 (2004). The court must first look to a statute's plain meaning. Plain meaning may be discerned from all that the legislature has said in the statute and related statutes that disclose legislative intent about the provision in question. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002). Courts must keep in mind the need to satisfy the intent of the legislature while avoiding absurd results. In re Det. of Swanson, 115 Wash.2d 21, 28, 793 P.2d 962, 804 P.2d 1 (1990).
a. The Plain Language of RCW 10.99.050 Establishes a Stand-Alone Order
¶ 29 While a DVNCO can be issued only when a sentence is suspended or deferred, the order can nonetheless survive for up to five years following a conviction. Chapter 10.99 RCW anticipates that courts may issue no-contact orders at every possible juncture of prosecution. See RCW 10.99.040(2)(a) (court may impose a no-contact order before *1185 arraignment or trial), (3) (at the time of arraignment, "the court shall determine whether a no-contact order shall be issued or extended"), .050(1) (the court may issue a postconviction no-contact order as a condition of sentence); State v. Schultz, 146 Wash.2d 540, 544, 48 P.3d 301 (2002). Victims remain vulnerable throughout their abuser's prosecution and especially when a convicted abuser is released from jail or completes active probation. Chapter 10.99 RCW recognizes these victims' reality.
¶ 30 The State and Granath argue over RCW 10.99.050(1)'s use of the phrase "such condition shall be recorded " in determining whether the authority to issue a DVNCO under RCW 10.99.050 is tethered to the length of probation. (Emphasis added.) The majority agrees with Granath that "recorded"
*560 indicates that a DVNCO is merely "recording" a condition of the sentence, thus there is no authority for the order to last longer than the condition it records. See majority at 1182. This view fails to read chapter 10.99 RCW as a whole, including its stated purpose.
¶ 31 At each point of prosecution, a corresponding statute under chapter 10.99 RCW grants the judge the authority to "issue" a no-contact order. The verb "issue" connotes authority. See RCW 10.99.050(2)(a) ("[w]illful violation of a court order issued under this section"), .040(7) (referring to orders "issued under this chapter"). RCW 10.99.050(1) empowers sentencing courts to issue DVNCOs as long as a DVNCO is recorded as a condition of the sentence. RCW 10.99.050(2) - (3) discuss the parameters for issuing such an order. "Recorded" merely indicates that RCW 10.99.050 can be utilized by a sentencing court. As long as a condition of the sentence that includes the issuance of a DVNCO has been laid out in the judgment and sentence, RCW 10.99.050 may be separately invoked. If a DVNCO were a mere recording instrument of the no-contact condition in the judgment and sentence, as the majority posits, the creation of RCW 10.99.050 would be unnecessary because the judgment and sentence already orders no contact with the victim.
¶ 32 A DVNCO issued under RCW 10.99.050 does more than record a sentencing condition; it enables a sentencing court to exercise discretion in how to best keep a victim safe from further abuse. The sentencing judge issuing a DVNCO achieves this by outlining specific parameters of how a defendant is to accomplish the rehabilitative portion of his or her sentence in not coming into contact with his or her victim. This structure is illustrated by the fact that a DVNCO contains additional, specific provisions of no-contact that are not included in the judgment and sentence. In Granath's case, she was not ordered merely to have no contact with the victim as indicated on the judgment and sentence, she was specifically ordered by the DVNCO to *561 remain 500 feet away from her victim, not to keep her victim under surveillance, and not to contact her victim through third parties, among other restrictions. Clerk's Papers (CP) at 39. If the DVNCO were purely a recording of the sentencing condition, we would expect it to match the judgment and sentence.
¶ 33 The plain language of RCW 10.99.050 also reveals that a DVNCO is enforceable beyond the duration of a probationary period, reinforcing that the order stands on its own. RCW 10.99.050(2)(a) and RCW 10.99.050(3) are instructive. RCW 10.99.050(2)(a) states that a "[w]illfull violation of a court order issued under this section is punishable under RCW 26.50.110." Nowhere in RCW 10.99.050 is it stated that a violation of a DVNCO must necessarily result in revocation of a suspended sentence. The only language that RCW 10.99.050 sets out for violating the DVNCO condition of receiving a suspended or deferred sentence is punishment under RCW 26.50.110. It follows that during active probation, a DVNCO may be enforced by both revocation of the suspended or deferred sentence pursuant to the judgment and sentence, and by independent punishment provided by RCW 10.99.050(2)(a). After the term of probation ends, a DVNCO is enforced solely under RCW 26.50.110. This understanding of the statute is consistent with a plain reading of RCW 10.99.050(2) - (3) that lays out the terms for complying with a DVNCO issued under RCW 10.99.050(1).
¶ 34 Further, RCW 10.99.050(3) provides that a sentencing judge must indicate on the order that the district court actively retains *1186 jurisdiction over the defendant in enforcing the order. That jurisdiction could operate during probation only or up to five years as part of receiving a suspended or deferred sentence. This reading is compatible with RCW 3.66.068(1)(a), which states that district courts can retain "continuing jurisdiction and authority" over defendants for up to five years to suspend or defer a sentence upon stated terms. Such terms of suspension or deferment may include *562 the issuance of a stand-alone no-contact order under RCW 10.99.050, as is the case here. Thus, an order issued under RCW 10.99.050 cannot exceed the court's jurisdiction, and Granath's does not.
¶ 35 Pursuant to RCW 10.99.040(2)(c), the legislature tasked the Administrative Office of the Courts (AOC) with developing master pattern forms for all no-contact orders issued under chapter 10.99 RCW. Such no-contact orders issued under chapter 10.99 RCW are to "substantially comply" with the pattern form developed by AOC. Id. On Granath's DVNCO, a bold text box indicates that the district court could retain, and did retain, continuing jurisdiction and authority to issue the DVNCO for five years. CP at 39. The pattern form does not limit the DVNCO's duration to the end of the probationary period. While the AOC's interpretation provided in the pattern DVNCO is not binding, it follows from a plain reading of RCW 10.99.050 as providing for a stand-alone no-contact order. Further reinforcing this view, the "conditions" section on Granath's judgment and sentence refers to "the separate No-Contact Order," evidence of the that fact that RCW 10.99.050 orders are in addition to terms of sentencing. CP at 35.
¶ 36 Finally, "closing" a case is not synonymous with "terminat[ing]" a case under the plain language of RCW 10.99.050(4). When Granath "closed" her case on December 8, 2014 by paying the remainder of her fines, the court did not also "terminate[ ]" her DVNCO under RCW 10.99.050(4). The specialized condition for receiving a suspended sentence remained in effect for three more years after her case "closed," despite the end of the probation term. Because RCW 10.99.050(4) requires actual "modifi[cation]" or "terminat[ion]" of a DVNCO, not simply assuming a DVNCO is void at the end of a probationary period, this plain language indicates the legislature intended a DVNCO to be issued as a stand-alone order that must also be vacated independent of the probationary period's completion.
*563 b. Legislative Purpose: To Protect Victims
¶ 37 Statutes should be interpreted to further, not frustrate, their intended purpose. Bostain v . Food Express, Inc., 159 Wash.2d 700, 712, 153 P.3d 846 (2007) (citing Burnside v. Simpson Paper Co., 123 Wash.2d 93, 99, 864 P.2d 937 (1994). Chapter 10.99 RCW was enacted for the protection of the victim, not punishment of the abuser. The plain language of RCW 10.99.050 reflects the clear statutory purpose outlined in RCW 10.99.010 : "[T]o recognize the importance of domestic violence as a serious crime against society and to assure the victim of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide ." (Emphasis added.) Recognizing a DVNCO lasts for the maximum term of authority a sentencing judge has to impose sentencing conditions under RCW 3.66.068 provides "maximum protection from abuse" for victims, without further punishing the defendant. Keeping a convicted domestic abuser away from his or her victim is not punishment; it is deserved protection for the domestic violence survivor. That it may also require the abuser to exercise rehabilitative self-control around those who do not desire unwanted contact does not alter its purpose. Thus, while RCW 3.66.068 concerns punishment, RCW 10.99.050 concerns protection without overstepping the jurisdictional limits provided by RCW 3.66.068. This relationship between the two statutes is consistent with the legislative purpose set out in RCW 10.99.010 -protection of victims.
¶ 38 I am concerned that the majority's interpretation of RCW 10.99.050 will undermine the protective purpose of chapter 10.99 RCW. A copy of the DVNCO is provided to both the victim and law enforcement. RCW 10.99.050(1), (3). RCW 10.99.050(3) instructs that the DVNCO shall be entered for "one year or until the expiration date specified on the order." If DVNCOs that specify a duration longer than the length of probation become *1187 automatically void after probation without further court action, as the majority *564 advances, how is law enforcement and, most importantly, the victim to know of the abuser's lawful ability to contact the victim? See majority at 1182-83 (stating that the State's "public policy argument is inconsistent with the plain language of the statute"). We should not interpret chapter 10.99 RCW to create such a risk of confusion-and harm. Such an interpretation goes against the legislative purpose to protect victims' safety.
¶ 39 Discerning RCW 10.99.050's plain meaning requires this court to examine not only RCW 10.99.050 but also related statutes, with an eye toward finding a harmonious statutory scheme. State v. Bigsby, 189 Wash.2d 210, 216, 399 P.3d 540 (2017). The majority references related statutes, but fails to fully appreciate and analyze their interlaced relationship to RCW 10.99.050. See majority at 1181, 1182. Two related statutes concerning the same subject matter-a sentencing court's authority to protect victims-illuminate the fact that DVNCOs are imposed as stand-alone orders. RCW 7.90.150(6)(a) (sexual assault postconviction orders) and RCW 7.92.160(6)(a) (stalking postconviction orders) share the same enabling language as RCW 10.99.050(1) for a sentencing court to issue a specialized no-contact order: "When a defendant is found guilty of [the relevant type of crime] and a condition of the sentence restricts the defendant's ability to have contact with the victim, such condition shall be recorded...." The only difference between these victim-protecting statutes and RCW 10.99.050 is that duration of the order is explicitly stated in the statute.[1] However, these other specialized orders were intended to be issued only if a victim could not *565 qualify for a DVNCO.[2] In addition, RCW 7.90.150 was designed to mirror domestic violence protections issued under RCW 10.99.050.[3] Given this statutory scheme, it makes little sense that the legislature intended to afford sexual assault and stalking victims protection even after a defendant has completed probation, but denied similar protection to domestic violence victims.
¶ 40 In sum, I would hold that the plain language of RCW 10.99.050 establishes that a DVNCO is issued as a stand-alone order at the time of sentencing and is not dependent on the length of probation.
II. Duration of the DVNCO Is Found on the Face of the Order
¶ 41 Although a sentence may be suspended for less than five years, that does not mean a DVNCO issued as part of the sentence, generally, must match the length of the imposed suspended sentence. Contrary to the majority's interpretation, durational language is indicated in RCW 10.99.050(3) -by reference to the expiration date specified on the order. The majority reads "expiration date specified on the order" to be synonymous with "expiration date of the suspended or deferred sentence." See majority at 1181-82. This is not the plain language of the statute. For Granath's convictions, the district court imposed 364 days in jail with 334 days suspended for 24 months on various conditions, *566 including the issuance of a separate no-contact order. CP at 35-37. On its *1188 face, the order stated, "This no-contact order expires on: __________. Five years from today if no date is entered." CP at 39. No date was written in the blank. Id. Consistent with the plain reading of RCW 10.66.068, the district court lawfully retained jurisdiction over Granath by issuing a DVNCO for a period of five years as a condition of receiving a suspended sentence and specified this duration on the face of the DCNVO.
¶ 42 The scheme of issuing a DVNCO for a greater length than the probationary period reinforces the sentencing court's wide discretion in determining what kind of sentence best rehabilitates a domestic violence offender. A sentencing court may decide that active probation is not necessary after two years, but this does not mean the victim's protection must end. RCW 26.50.110 may act as an incentive for offenders to remain in compliance with a DVNCO without the added cost of probation and active monitoring. RCW 10.99.050(2)(a). For this to happen, RCW 10.99.050 ensures a DVNCO does not expire the moment a person is released or completes her term of probation. The legislature articulated that the response to domestic violence is "the enforcement of the laws to protect the victim and [to] communicate the attitude that violent behavior is not excused or tolerated." RCW 10.99.010. A protection order that lasts beyond probation serves this purpose without further punishing the defendant. It is properly understood as a stand-alone order.
CONCLUSION
¶ 43 A DVNCO's purpose is clear: to protect survivors of domestic violence from further harm. To effectuate this purpose, RCW 10.99.050 authorizes a sentencing judge to issue a stand-alone no-contact order and to impose it for the duration stated on the order, not to exceed five years. I would reverse the Court of Appeals decision and reinstate *567 the district court's denial of Granath's motion to vacate the no-contact order.

See RCW 7.92.160(6)(c) ("A final stalking no-contact order entered in conjunction with a criminal prosecution shall remain in effect for a period of five years from the date of entry."); RCW 7.90.150(6)(c) ("A final sexual assault protection order entered in conjunction with a criminal prosecution shall remain in effect for a period of two years following the expiration of any sentence of imprisonment and subsequent period of community supervision, conditional release, probation, or parole.").

See RCW 7.90.005 ("It is the intent of the legislature that the sexual assault protection order created by this chapter be a remedy for victims who do not qualify for a domestic violence order of protection."); RCW 7.92.010 ("Victims of stalking conduct deserve the same protection and access to the court system as victims of domestic violence and sexual assault.... The legislature finds that preventing the issuance of conflicting orders is in the interest of both petitioners and respondents.").

House Judiciary Comm. , H.B. Analysis on H.B. 2576, at 3, 59th Leg., Reg. Sess. (Wash. 2006) ("Violations of a SAPO [sexual assault protection order] have the same penalties as violations of domestic violence protection orders."); Senate Comm. on Judiciary , S.B. Rep. on S.B. 6478, at 2-3, 56th Leg., Reg. Sess. (Wash. 2006) ("[A sexual assault victim] should be able to get the same protections as a domestic violence victim.... This legislation is meant to mirror domestic violence protection orders.").