[No. 61118-1. En Banc. July 28, 1994.]

*In the Matter of the Detention of* G.V.

FRANCIS PODREBARAC, ET AL, *Appellants*, v. G.V., *Respondent.*

*In the Matter of the Detention of* A.K.

D. LEE BROCK, ET AL, *Appellants*, v. A.K., *Respondent.*

*In the Matter of the Detention of* R.P.

FRANCIS PODREBARAC, ET AL, *Appellants*, v. R.P., *Respondent.*

*Christine O. Gregoire, Attorney General,* and *Linda A. Sullivan* and *Christopher Jennings, Assistants,* for appellants.

*John A. McNeish* of *Department of Assigned Counsel,* for respondents.

UTTER, J. — The trial court commissioner dismissed petitions by the State of Washington to recommit three mentally ill individuals, G.V., A.K., and R.P. The State appealed the dismissals to the Court of Appeals. After consolidating the three cases, the Court of Appeals certified the action to this court. We accepted certification pursuant to RAP 4.2 and RCW 2.06.030 and reverse the commissioner's decisions.

At issue is the proper interpretation of a portion of Washington's involuntary treatment act. The act permits the State to commit an individual involuntarily to a mental facility for treatment if the individual presents a likelihood of harm to others or him- or herself or is "gravely disabled". RCW 71.05.280. A person is considered to be "gravely disabled" if he or she:

> (a) Is in danger of serious physical harm resulting from a failure to provide for his essential human needs of health or safety, or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety;

RCW 71.05.020(1).

Prior to the expiration of an involuntary commitment period imposed under RCW 71.05.280, the State is stat-

utorily authorized to seek a new period of commitment if certain conditions are present, including if there exists a likelihood of serious harm to others or if the individual continues to be gravely disabled. RCW 71.05.320(2).[1]

In connection with the court hearing on the petition, a patient has the right to refuse medication during the 24 hours prior to the hearing (hereinafter right to refuse medication). RCW 71.05.210 provides:

> Each person involuntarily admitted to [a] treatment facility shall . . . receive such treatment and care as his or her condition requires . . . except that, beginning twenty-four hours prior to a court proceeding, the individual may refuse all but emergency life-saving treatment, and the individual shall be informed at an appropriate time of his or her right to such refusal of treatment.

Patients subject to a new commitment period under RCW 71.05.210 also have the right to be informed, prior to the commencement of the 24-hour period, of the right to refuse medication. WAC 275-55-161 provides:

> Any involuntary patient may refuse all but emergency life-saving treatment beginning twenty-four hours prior to any hearing. On admission to the facility such patient shall be informed of his or her right to refuse all treatment except life-saving treatment during such twenty-four hour period and shall again be so informed prior to the twenty-four hour period . . . ..

---

[1]RCW 71.05.320(2) reads in pertinent portion as follows:

"[An involuntarily committed person] shall be released from involuntary treatment at the expiration of the period of commitment . . . unless the superintendent or professional person in charge of the facility in which he is confined . . . files a new petition for involuntary treatment on the grounds that the committed person;

"(a) During the current period of court ordered treatment: (i) Has threatened, attempted, or inflicted physical harm upon the person of another, or substantial damage upon the property of another, and (ii) as a result of mental disorder or developmental disability presents a likelihood of serious harm to others; or

"(b) Was taken into custody as a result of conduct in which he attempted or inflicted serious physical harm upon the person of another, and continues to present, as a result of mental disorder or developmental disability a likelihood of serious harm to others; or

"(c) Is in custody pursuant to RCW 71.05.280(3) and as a result of mental disorder or developmental disability presents a substantial likelihood of repeating similar acts considering the charged criminal behavior, life history, progress in treatment, and the public safety; or

"(d) Continues to be gravely disabled."

The appropriate procedural remedy for a potential interference with the right to refuse medication and the attendant right to be informed of such right is at issue here. The facts relevant to each of the three consolidated cases follow.

On March 23, 1992, a court commissioner found G.V., an 86-year-old man, to present a likelihood of serious harm to others and to be gravely disabled and committed him to treatment at Western State Hospital for 180 days. Supplemental Clerk's Papers (G.V.), at 1-3; Clerk's Papers (G.V.), at 4-5. Prior to the expiration of G.V.'s commitment period on September 19, the State sought an additional commitment period of 180 days to permit further treatment. The State alleged that G.V. continued to be gravely disabled; had threatened, attempted, or inflicted physical harm upon another or himself during the period in which he was detained; was taken into custody as a result of conduct in which he threatened, attempted or inflicted physical harm on another or himself; and continued to present, as a result of his mental disorder, a likelihood of serious harm to others or himself. Clerk's Papers (G.V.), at 1-3. G.V.'s court hearing was set for September 14, 1992. Clerk's Papers (G.V.), at 1-3.

Similarly, on June 19, 1992, a court commissioner found R.P. to be gravely disabled and committed him to treatment at Western State Hospital for 90 days. Supplemental Clerk's Papers (R.P.), at 1-3. At the time of the commitment, R.P. was a 71-year-old man who was delusional and was alleged to have tried to beat a 90-year-old resident in a nursing home. Clerk's Papers (R.P.), at 4-5. Prior to the expiration of R.P.'s commitment period on September 17, the State sought to provide for further treatment by filing for a new commitment period of an additional 180 days. The additional treatment and commitment were sought based on the State's allegations that R.P. continued to be gravely disabled; had threatened, attempted, or inflicted physical harm upon another or himself during the period in which he was detained; was taken into custody as a result of conduct in which he threatened, attempted or inflicted physical harm on another or himself; and continued to present, as a result

of his mental disorder, a likelihood of serious harm to others or himself. Clerk's Papers (R.P.), at 1-3. A court hearing was set for the same time as G.V.'s hearing on September 14, 1992. Clerk's Papers (R.P.), at 1-3.

Notwithstanding the right to be informed in a timely manner of the right to refuse medication, it was not until the morning of September 14, less than 24 hours before the hearing, that G.V. and R.P. were informed of their respective rights to refuse medication. Since both had taken medication within the 24 hours prior to the hearing, they would have been deprived of their rights to refuse medication if the hearing had been permitted to go forward. The State learned of the defect prior to the commencement of the hearing and, immediately upon the commencement of the hearing, informed the court and attempted to secure a 1-day continuance to permit G.V. and R.P. to exercise their rights to refuse medication. Since G.V.'s commitment period did not expire until September 19 and R.P.'s commitment period did not expire until September 17, a 1-day continuance to September 15 would have permitted rescheduled hearings to have been held prior to the expiration of both their commitment periods. Nevertheless, the commissioner denied the State's motion for a 1-day continuance and granted the patients' motions to dismiss the State's petitions.

The third case at issue here involves the commitment of A.K. On July 31, 1992, A.K., a 32-year-old man, was found to be gravely disabled and committed to involuntary treatment at Western State Hospital for 90 days. Supplemental Clerk's Papers (A.K.), at 1-3. As with G.V. and R.P., the State sought a new period of commitment for further treatment of A.K. It alleged A.K. continued to be gravely disabled and sought an additional 180 days for continued treatment. The court hearing was set for October 14, 1992, well in advance of the expiration of A.K.'s commitment period on October 29, 1992. Clerk's Papers (A.K.), at 1-3. During the course of the hearing, the State and counsel for A.K. discovered that A.K.'s right to refuse medication had been impaired. It is uncontested that A.K. had been informed in a

timely manner of his right to refuse medication and elected to do so. However, despite his decision, he stood in line with other patients being administered medication and, as a result, was inadvertently medicated by the staff within the 24 hours prior to his hearing. As with G.V. and R.P., A.K.'s right to refuse medication would have been violated if the hearing had been allowed to proceed as originally scheduled.

The State moved for a voluntary nonsuit,[2] Report of Proceedings (A.K.), at 12; and counsel for A.K. moved for a dismissal, Report of Proceedings (A.K.), at 10, 13. Because A.K.'s commitment period did not expire until October 29, 1992, a hearing could have been rescheduled prior to the expiration of A.K.'s original commitment period. Noting it was "real unfortunate in this case" and that he had "no choice but to dismiss", the commissioner dismissed the State's petition. Report of Proceedings (A.K.), at 14.

The State appealed the three dismissals to the Court of Appeals. The Court of Appeals consolidated the three cases and certified them to this court. We agreed to direct review pursuant to RAP 4.2 and RCW 2.06.030 and consider whether the commissioner erred in denying the State's motions for continuances in the cases of G.V. and R.P. and/or in dismissing the State's petitions in each of the three cases.

 This case is technically moot because this court cannot grant the relief originally sought by the State. *In re Swanson*, 115 Wn.2d 21, 804 P.2d 1 (1990). However, we may decide a moot case if it involves matters of continuing and substantial public interest. *In re Swanson, supra.* This court has recognized "the need to clarify the statutory scheme governing civil commitment is a matter of continuing and substantial public interest". *In re LaBelle*, 107 Wn.2d 196, 200, 728 P.2d 138 (1986) (quoting *Dunner v. McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984)). Additionally, the commissioner's actions indicate these issues are likely to

---

[2]Governed by Superior Court Civil Rule 41(a)(1)(B), a voluntary nonsuit is a dismissal of an action by the court on the motion of a plaintiff made before he or she has rested; it can be with or without prejudice but is presumed to be without prejudice unless the order of dismissal otherwise states.

recur. See Report of Proceedings (G.V.), at 3; Report of Proceedings (R.P.), at 3 (indicating commissioner's belief that problem was prevalent). Therefore, although this case is technically moot, we decide this case on its merits.

THE COMMISSIONER ABUSED HIS DISCRETION IN DENYING THE STATES MOTIONS FOR CONTINUANCES AND IN DISMISSING THE STATES PETITIONS IN THE CASES OF R.P. AND G.V.

██ Decisions whether to grant a motion for a continuance are generally within the discretion of the trial court and are upheld absent an abuse of discretion. *State v. Campbell*, 103 Wn.2d 1, 14, 691 P.2d 929 (1984), *cert. denied*, 471 U.S. 1094 (1985). An action constitutes an abuse of discretion if the discretion is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. . . . Whether this discretion is based on untenable grounds, or is manifestly unreasonable, or is arbitrarily exercised, depends upon the comparative and compelling public or private interests of those affected by the order or decision and the comparative weight of the reasons for and against the decision one way or the other". *In re Schuoler*, 106 Wn.2d 500, 512, 723 P.2d 1103 (1986).

██ An examination of the express and tacit purposes of the involuntary treatment act and of the commissioner's reason for his decisions demonstrates the commissioner abused his discretion in refusing to grant the State's motions for continuances in the cases of G.V. and R.P. and in dismissing the petitions. The express purposes of the act include the following compelling public interests:

(2) To provide prompt evaluation and short term treatment of persons with serious mental disorders;

. . . .

(4) To provide continuity of care for persons with serious mental disorders; [and]

. . . .

(7) To protect the public safety.

RCW 71.05.010. The involuntary treatment act is to be "carefully construed" to achieve these purposes. RCW 71.05.015.

With respect to the private interests of G.V. and R.P., granting a continuance would not have compromised any of the purposes of the act or any rights conferred by the act. Since G.V.'s commitment period did not expire until September 19 and R.P.'s commitment period did not expire until September 17, a 1-day continuance to September 15 would have protected their rights to refuse medication without compromising any rights under the act or any of the objectives of the act.

The patients' argument that *In re Swanson, supra,* controls is unpersuasive. Br. of Resp't, at 16. We held in *In re Swanson, supra,* that after the expiration of an initial 72-hour detention period stipulated by RCW 71.05.180, a petition by the State to commit the individual must be dismissed. We premised our decision on the principle that statutes impacting liberty interests must be strictly construed and noted that our holding was "expressly limited to this context". *Swanson,* at 31. The right at issue here is not a right to be released; rather, it ensures that patients enjoy a hearing during which they can function without the effects of medication taken within the last 24 hours. RCW 71.05.210. *Swanson,* therefore, does not control the outcome of this case.

Underlying the involuntary treatment act is a tacit presumption in favor of deciding issues on the merits. This presumption furthers both public and private interests because the mental and physical well-being of individuals as well as public safety may be implicated by the decision to release an individual and discontinue his or her treatment. *See In re Swanson,* 115 Wn.2d 21, 804 P.2d 1 (1990) (ensuring continuing of care and protection of public safety are goals of the civil commitment law); *In re LaBelle,* 107 Wn.2d 196, 201, 728 P.2d 138 (1986) (State has interest in protecting community from the dangerously mentally ill and in providing care to those unable to care for themselves). Additionally, this presumption reflects the general, modern trend in favor of interpreting statutes to permit decisions on the merits. *Coggle v. Snow,* 56 Wn. App. 499, 507, 784 P.2d 554

(1990) (citing *Weeks v. Chief of Wash. State Patrol*, 96 Wn.2d 893, 895-96, 639 P.2d 732 (1982)). The commissioner's decisions failed to take notice of this presumption.

The reason given by the commissioner for denying the continuances contributes to our conclusion he abused his discretion. Referring to the repeated requests by the State for continuances in other cases, he stated: "This has been a problem for the three years I've been working". Report of Proceedings (G.V.), at 3; Report of Proceedings (R.P.), at 3. Even if the commissioner's perception of a systemic problem were accurate, granting a continuance would have in no way compromised G.V.'s or R.P.'s rights to refuse medication and would have better comported with the legislative concerns which underlie the act. Moreover, denying the continuances on the basis of unsubstantiated and historical acts and omissions is inappropriate, particularly on a record devoid of any facts substantiating the frequency with which continuances have been sought. *State v. Kokot*, 42 Wn. App. 733, 713 P.2d 1121 (without facts in the record supporting alleged court congestion, a trial judge's decision to grant continuance because of court congestion was an abuse of discretion) (citing *State v. Mack*, 89 Wn.2d 788, 576 P.2d 44 (1978)), *review denied*, 105 Wn.2d 1023 (1986).

For these reasons, the commissioner's denial of the State's motion for continuances as well as his decisions to dismiss the petitions constitute abuses of discretion under the standard articulated in *Schuoler*, and we reverse. We take care to note both that our holding is limited to the facts of these cases, and that we do not decide whether a single one of the several reasons described above would support a finding that the commissioner abused his discretion.

### The Commissioner's Dismissal of the State's Petition With Prejudice in the Case of A.K. Constituted an Abuse of Discretion

It is evident from the procedural posture of this case and from the record that the commissioner intended to dismiss

the State's petition with prejudice.[3] The commissioner has the discretion to do so both under CR 41(a)(4)[4] and as part of his or her inherent power to impose the sanction of dismissal in a proper case, *see* 24 Am. Jur. 2d *Dismissal, Discontinuance, and Nonsuit* § 41 (1983).

As with the cases involving G.V. and R.P., however, the granting of a nonsuit would have preserved A.K.'s right to refuse medication prior to a hearing on the merits and would not have interfered with any other right under the act or any purpose of the act. As with the cases involving G.V. and R.P., *In re Swanson, supra,* does not govern this case since it is the right to refuse medication which is at issue, not a right to be released. During oral argument, counsel for the patients made a second argument that the patients had established a "right" to be released. He premised this argument on a misreading of CR 40(d). CR 40(d) provides, in the absence of good cause shown for a case to be continued, the case "shall be tried or *dismissed*". (Italics ours.) Although the rule requires the action to be "dismissed" if the trial does not proceed and good cause is not shown for a continuance, it does not specify whether the dismissal must be with or without prejudice. Read consistently with CR 41(a)(1) which permits the exercise of a plaintiff's mandatory right to a nonsuit prior to resting to be with or without prejudice, CR 40(d) permits a dismissal either with or without prejudice.

---

[3]MPR 3.4(a) provides mental health hearings "shall be proceeded with as in any other civil action". Under CR 41(a)(1)(B), the court is required to dismiss an action when a plaintiff moves for a dismissal prior to concluding his or her case: "any action *shall* be dismissed by the court:

". . . Upon motion of the plaintiff at any time before plaintiff rests at the conclusion of his opening case." (Italics ours.) Since the State had not yet rested, the commissioner's dismissal of the case should be considered to fall squarely within this rule since the order in this case does not "state otherwise". Clerk's Papers (A.K.), at 8. For the sake of judicial economy, we will, on the facts of this case, infer that the commissioner intended to dismiss the petition with prejudice. However, we strongly caution trial courts that when a plaintiff has moved for a voluntary nonsuit and a dismissal is granted, an absence of language to the contrary will ordinarily denote that the dismissal is without prejudice.

[4]CR 41(a)(4) provides "*Unless otherwise stated in the order of dismissal,* the dismissal is without prejudice . . .". (Italics ours.)

The commissioner therefore could have granted the dismissal without prejudice without violating any right conferred by CR 40(d).

Despite the fact that 2 weeks remained in A.K.'s commitment period, the commissioner summarily dismissed the petition with prejudice, refusing to consider the State's contention that A.K. was gravely disabled, the other merits of the petition, the purposes of the involuntary treatment act, or the presumption in favor of deciding these cases on the merits.

Finally, the commissioner premised his dismissal of the petition with prejudice on an improper ground. He stated: "I think I don't have any choice but to dismiss the petition". Report of Proceedings (A.K.), at 14. Nothing in the statutory scheme supports the commissioner's belief that the only remedy permissible was dismissal when time remained on the earlier commitment.

Considering the public and private interests involved and the *Schuoler* test, we find the commissioner's decision to dismiss the State's petition with prejudice to have been an abuse of discretion and we reverse. Our holding here is also limited to the facts before us in this case and we do not decide whether a single one of the reasons described above would support a finding that the commissioner abused his discretion.

All three cases are remanded for any further proceedings which may be necessary.

ANDERSEN, C.J., and BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.