[No. 18812-4-III.   Division Three.   May 13, 2004.]

*In the Matter of the Detention of* HERMAN ROSS PASCHKE, *Appellant*, THE STATE OF WASHINGTON, *Respondent.*

*Cynthia A. Jordan*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Sarah B. Sappington, Assistant*, for respondent.

BROWN, J. — The State filed a sexually violent predator petition against Herman Ross Paschke shortly before he was to be released from prison. A jury found him a sexually violent predator (SVP). The trial court then committed Mr. Paschke to the State's Special Commitment Center. After Mr. Paschke's appeal, we twice stayed this matter to await Supreme Court decisions, but decline the State's request for a third stay because of the unique facts of this case. Subsequent to Mr. Paschke's appeal, he was released on a Less Restrictive Alternative (LRA). Mr. Paschke, a sex offender, was incarcerated for five years after a parole violation prior to the filing of the SVP petition. He admits his parole violation involved an impermissible relapse of sexual behavior. Under these facts, the trial court did not err in deciding the recent overt act requirements were satisfied. Additionally, we reject the remaining evidence admissibility and sufficiency questions. Accordingly, we affirm.

## FACTS

In 1972, Mr. Paschke was convicted of one count of abduction and one count of carnal knowledge. In 1979, Mr. Paschke was convicted of one count of second degree rape. On April 6, 1994, two days before his mandatory release, the State petitioned the Spokane County Superior Court to have Mr. Paschke committed to the custody of the Department of Social and Health Services as an SVP pursuant to chapter 71.09 RCW. On the State's motion, the superior court issued a probable cause order directing

custodial detention and evaluation of Mr. Paschke at the Special Commitment Center (SCC), now moved from Monroe to McNeil Island.

Mr. Paschke unsuccessfully sought consideration of LRAs at trial. Although conceding some relevancy, the State successfully argued the trial court could not consider evidence on LRAs until after Mr. Paschke was found to be an SVP. Accordingly, the trial court excluded Dr. Stuart Brown's testimony regarding LRAs. The trial court did allow Mr. Paschke's testimony regarding "any voluntary treatment plans he will undertake if not found to be a sexually violent predator . . . ." Clerk's Papers at 567.

The trial court denied Mr. Paschke's motions to exclude victims' testimony and certain victims' earlier photographs. Accordingly, in 1999 the jury learned how Mr. Paschke (1) broke into T.H.'s house and forced her to perform oral intercourse in 1971 when she was 12 years old, (2) later forced T.H. to perform oral and vaginal intercourse, (3) threatened E.C. during obscene telephone calls in 1989, (4) attempted to break into M.P.'s house in 1979, and (5) broke into P.B.'s house and raped her repeatedly in 1979. Mr. Paschke disputed other sexual allegations related to his wife.

Dr. Leslie Rawlings, a psychologist, testified Mr. Paschke suffered from a mental abnormality: "Rape, paraphilia not otherwise specified rape." Report of Proceedings (RP) at 734. Dr. Rawlings described paraphilia as abnormal sexual behavior. Dr. Rawlings believed Mr. Paschke suffered from "[a]ntisocial personality disorder with paranoid features." RP at 754. Dr. Rawlings stated it was his professional opinion that Mr. Paschke was "more likely than not to reoffend." RP at 782.

Dr. Rawlings, in detail, explained the basis for his opinions, covering Mr. Paschke's history from age seven of breaking into houses to steal panties, making obscene phone calls, and raping and sexually assaulting various persons. Dr. Rawlings described Mr. Paschke's prison and parole history. Dr. Rawlings concluded Mr. Paschke re-

quired treatment for sexual deviancy in "a secure facility." RP at 783. Further, Mr. Paschke was "more likely than not to reoffend if he is released to the community." RP at 784. Dr. Rawlings said he was unaware of any alternative setting where Mr. Paschke could be treated other than the secured facility at the SCC.

In general, Dr. Brown, a state certified sex offender treatment provider gave testimony more favorable to Mr. Paschke. He opined Mr. Paschke did not suffer from an "active" paraphilia and characterized Mr. Paschke's record of behavior in his last 10 years of confinement as "very good," with one formal infraction and self-reported incidents of marijuana consumption. RP at 950. He did not believe Mr. Paschke met the clinical definition of "an antisocial personality disorder." RP at 951. Dr. Brown also found it "less likely than not" that Mr. Paschke would reoffend. RP at 1000. Dr. Brown was not allowed to testify as to the availability of LRAs.

Mr. Paschke testified he learned to employ intervention strategies to control his behavior rather than act out a sexual assault cycle. Mr. Paschke said the intervention strategies worked for him and would work better if he could get "an intensified treatment program." RP at 1205. Mr. Paschke stated that he benefited from a spiritual awakening. When asked what his plans were should he be released from the SCC, he indicated he had no concrete plans, but would get into a sexual deviancy program.

When asked in cross-examination why he still wanted to undergo counseling, Mr. Paschke admitted he would "always have that potential to possibly reoffend." RP at 1209. Further, Mr. Paschke acknowledged the 1971 and 1979 rapes and admitted he had probably relapsed when he made obscene phone calls in 1989.

To find Mr. Paschke an SVP the jury was instructed that it must find beyond a reasonable doubt he suffered from a mental abnormality or personality disorder and such conditions make "the respondent likely to engage in predatory acts of sexual violence if not confined to a secure facility."

RP at 1244. The trial court did not instruct the jury to consider the availability of treatment in a situation less restrictive than total confinement. The jury found against Mr. Paschke. Mr. Paschke appealed.

We stayed the matter twice, first to await the outcome of *In re Detention of Brooks*, 145 Wn.2d 275, 36 P.3d 1034 (2001), and then a second time to await the mandate for *In re Detention of Thorell*, 149 Wn.2d 724, 72 P.3d 708 (2003), *cert. denied*, __ U.S. __, 124 S. Ct. 2015, 158 L. Ed. 2d 496 (2004). During the second stay, it appears Mr. Paschke petitioned successfully for a postcommitment review hearing pursuant to RCW 71.09.090. The parties did not inform this court of proceedings subsequent to our second stay and have not supplemented our record to explain subsequent developments.

We gather from the post-*Thorell* briefing that Mr. Paschke was found amenable to treatment in an LRA during an annual review because the trial court has now ordered him transferred to a newly-established LRA located on McNeil Island, the Secure Community Transfer Facility. Nevertheless, Mr. Paschke contends the appeal is not moot. The State partly agrees, meriting some discussion regarding the effect of the subsequent proceedings

ANALYSIS

Effect of Subsequent Proceedings

The issue is whether the trial court's postpetition decision to partially release Mr. Paschke to an LRA renders this appeal moot. We disapprove of the parties proceeding with the postpetition proceeding in apparent violation of RAP 7.2(e).

■■ A case becomes moot when the appellate court can no longer grant effective relief. *In re Det. of G.V.*, 124 Wn.2d 288, 294, 877 P.2d 680 (1994). When Mr. Paschke first filed his appeal, he alleged numerous errors and asked for a new precommitment trial. Subsequently, Mr. Paschke must

have undergone a postpetition review hearing under RCW 71.09.090 to determine whether he, as an SVP, should be treated in an LRA or unconditionally released. In such a proceeding, the SVP has the right to a jury trial and expert testimony on his or her own behalf. RCW 71.09.090(3)(a). Likely, at the postpetition proceeding some of the same issues he alleged in his appeal were considered. However, we cannot properly determine the full impact of the postpetition proceeding without a supplemented record.

▇▇▇ We may hear a moot case if it implicates matters of continuing and substantial public interest. *G.V.*, 124 Wn.2d at 294. One issue here is whether the trial court was required to consider evidence at the precommitment trial of amenability to treatment in an LRA. This issue has been decided against Mr. Paschke by the Supreme Court. *Thorell*, 149 Wn.2d at 752-53. Mr. Paschke now resides in an LRA. And given the clarity of *Thorell*, we need not discuss whether Mr. Paschke should be released to an LRA.

▇▇ However, deserving discussion is the potential impact of *In re Detention of Albrecht*, 147 Wn.2d 1, 51 P.3d 73 (2002), which addresses the requirement of proving a "recent overt act" where alleged SVPs are put back into confinement after release into the community. Mr. Paschke's case facts differ from *Albrecht*; approximately five years passed between the time of Mr. Paschke's parole revocation and the SVP petition.

Recent Overt Act Requirement

The issue is whether the trial court should have required the State to prove Mr. Paschke had committed a recent overt act.

Generally, where an alleged SVP "is currently incarcerated no evidence of a recent overt act is required." *In re Pers. Restraint of Young*, 122 Wn.2d 1, 41, 857 P.2d 989 (1993); *see also In re Det. of Henrickson*, 140 Wn.2d 686, 692-93, 2 P.3d 473 (2000). Proof of an overt act is not required in the case of a currently incarcerated SVP be-

cause it would result in "a standard which would be impossible to meet." *Young*, 122 Wn.2d at 41. Stated another way, a prisoner has "no opportunity to commit a recent overt act while incarcerated." *Albrecht*, 147 Wn.2d at 9.

■ ■ Ordinarily, if the State has released the alleged SVP from total confinement into the community, it must prove he or she has committed a recent overt act before the trial court will commit the individual. *Albrecht*, 147 Wn.2d at 8; *Henrickson*, 140 Wn.2d at 692; *Young*, 122 Wn.2d at 41. But the State need not prove a recent overt act occurred between release and subsequent incarceration if the subsequent incarceration was "for a sexually violent offense, or for an act that itself would have constituted a recent overt act . . . ." *Henrickson*, 140 Wn.2d at 697. On the other hand, the State would have to prove a recent overt act if the SVP has been conditionally released into the community and the subsequent incarceration was for conduct that "would not in itself qualify as an overt act." *Albrecht*, 147 Wn.2d at 11.

According to the State's certification for determination of probable cause, Mr. Paschke was paroled in May 1987. In June 1989, the State revoked Mr. Paschke's parole, apparently because he made obscene telephone calls. Mr. Paschke now contends *Albrecht* requires the State to prove he committed an overt act during the two years he was on parole.

The facts of Mr. Paschke's case fall somewhere between *Henrickson* and *Albrecht*. In *Henrickson*, two SVPs were released after serving sentences for sexually related offenses and then convicted of subsequent offenses. *Henrickson*, 140 Wn.2d at 689, 691. One of the SVPs remained free on bond, but closely supervised, for three years pending resentencing on his most recent conviction. *Id*. at 689. The other SVP was free for three months pending sentencing on his most recent conviction. *Id*. at 691. In both cases, the State filed SVP commitment petitions just before both men were to be released from their most recent periods of incarceration. *Id*. at 690-91.

The *Henrickson* issue was whether the due process clause required the State to prove a recent overt act during the time between the SVP's release from custody and the subsequent incarceration. *Id.* at 693-94. The *Henrickson* court held proof of a recent overt act was not constitutionally required where the SVP had been incarcerated again for a sexually violent offense or conduct that would have constituted a recent overt act. *Id.* at 697. Here, in contrast to *Henrickson*, Mr. Paschke was not convicted of a subsequent offense. Instead, he admittedly violated the terms of his conditional release based upon making obscene phone calls and threatening rape. Mr. Paschke characterized the violation behavior as a "relapse." RP at 1221.

In *Albrecht*, the alleged SVP was released to community placement on July 22, 1996. *Albrecht*, 147 Wn.2d at 4. He was then arrested for violating the conditions of his community placement on August 20, 1996. *Id.* at 5. In October 1996, he was sentenced to 120 days for the violation. *Id.* While he was serving that sentence, the State filed an SVP petition in November 1996. *Id.* In sum, the critical events in *Albrecht* occurred in relatively short order. *Id.* at 5-6. By contrast, nearly five years lapsed between Mr. Paschke's return to incarceration and the filing of the SVP petition.

Current dangerousness is a bedrock principle underlying the SVP commitment statute. *See Albrecht*, 147 Wn.2d at 7. Accordingly, "due process requires a showing of current dangerousness." *Id.* at 10 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992)). "An individual who has recently been free in the community and is subsequently incarcerated for an act that would not in itself qualify as an overt act cannot necessarily be said to be currently dangerous." *Albrecht*, 147 Wn.2d at 11.

> The existence of a recent overt act, as that term is defined by former RCW 71.09.020(5) (1995), necessarily satisfies the dangerousness element required by due process. This is because the recent overt act requirement directly and specifically speaks to a person's dangerousness and thus satisfies the dangerousness element required by due process.

*Id.*

*Albrecht, Henrickson,* and *Young* collectively do not provide controlling guidance. But, certain unique facts underlying Mr. Paschke's case suggest a proper result.

First, there is nothing "recent" or "current" about 1987 to 1989, the period of Mr. Paschke's parole prior to the 1994 petition. Mr. Paschke was not recently released or reincarcerated at the time of the petition filing. Thus, to require a "recent overt act" under these circumstances would be absurd. *Henrickson,* 140 Wn.2d at 696.

Second, the sole reasonable inference drawn from the record indicates Mr. Paschke's 1989 parole revocation was tied to an overt act, albeit not a "recent" one in relation to the petition filing. Under the definition in effect at the time of Mr. Paschke's SVP petition, a recent overt act "means any act that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm." Former RCW 71.09.020(5) (1995).[1]

At Mr. Paschke's commitment trial, E.C. testified about a series of frightening obscene telephone calls she received in April and May 1989. According to Ms. C., the caller threatened to rape her. The police later told Ms. C. they had apprehended the caller and brought Ms. C. to the police station to confront Mr. Paschke. Although Ms. C. had never seen Mr. Paschke before, she recognized his voice as that of the threatening caller. As noted, Mr. Paschke admitted making the calls, characterizing his behavior as a "relapse." RP at 1221.

The *Albrecht* court grounded its holding on a concern that the State could get around the recent overt act requirement by jailing an alleged SVP for nonsexual, nonovert conduct

---

[1] The legislature subsequently renumbered and amended the definition, which now states:

"Recent overt act" means any act or threat that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act.

RCW 71.09.020(10).

such as "consuming alcohol, going to a park, or moving without permission, each of which would have been a violation of the terms of his community placement but none of which would amount to a recent overt act as defined by the sexually violent predator statute" and then, a short while later, filing an SVP petition as the person was about to be released. *Albrecht*, 147 Wn.2d at 11. That concern is not present here; the State did not file the petition until Mr. Paschke had spent nearly an additional five years serving out the remaining sentence on his underlying sexually violent offense. We reason the "recent overt act" requirement set forth in *Albrecht* does not apply to these unique facts. Accordingly, we hold the trial court did not err.

Affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

SWEENEY, A.C.J., and KURTZ, J., concur.