FILED
COURT OF APPEALS DI
STATE OF WASHINGTON

2015 SEP 21 AM 9: 1



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | NO. 72309-0-I |
| | ) | |
| R.C. | ) | |
| | ) | DIVISION ONE |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | FILED: September 21, 2015 |

LAU, J. — R.C. appeals an order of commitment for involuntary mental health treatment under chapter 71.05 RCW. He argues that his attorney's failure to timely serve a motion to dismiss the proceeding constitutes ineffective assistance of counsel. He also challenges the trial court's findings of fact and conclusions of law. We conclude substantial evidence supports the trial court's factual findings and these findings support its legal conclusions. Even if we assume, without deciding, that defense counsel's performance was deficient, R.C. shows no prejudice because he cannot show a reasonable probability that the trial court would have granted his motion to dismiss. We affirm.

## FACTS

On July 10, 2014, University of Washington Police Officer Keith Gonzalves received a call from a case manager in Everett stating that R.C. might be on campus and was possibly suicidal. Officer Gonzalves found R.C. on the University of Washington campus and asked him how his day was going and if he had been going to class. R.C. spoke quickly, appeared anxious, and meandered around many different topics. R.C. struggled to answer basic questions and made some strange comments including that he was trying to hide from the Chinese government. Earlier Officer Gonzalves talked to R.C.'s father about R.C.'s recent hospitalization for attempting suicide. R.C. denied he recently attempted suicide and said he was "pretty good today." Report of Proceedings (RP) (July 16, 2014) at 8. R.C. also told Officer Gonzalves that he failed to take his anxiety medication for the past 36 hours. R.C. said that he wanted to talk to somebody about the medications and wanted to go to the medical facility on campus, but it was closed. R.C. agreed to voluntarily go to a hospital. Due to a two to three hour wait for an ambulance, R.C. agreed to ride to the University of Washington Medical Center (UWMC) with Officer Gonzalves. R.C. was evaluated at UWMC at around 8:30 p.m. on July 10, 2014.

On July 11, R.C. was transferred to NAVOS Mental Health Systems, where Dr. Bethany O'Neill evaluated him. Dr. O'Neill determined that R.C. suffered from schizo-affective disorder. She testified that R.C. is "gravely disabled," and posed a substantial risk of harm to himself, others, and property. RP (July 16, 2014) at 16-17. Dr. O'Neill based this conclusion on R.C.'s behavior while under observation. She testified that R.C. exhibited disorganized, confused, and rapid speech. He was easily agitated and

-2-

yelled at staff. He was unpredictable and lacked impulse control. He also refused to take medication, damaged property, and threw food and food trays. Dr. O'Neill also testified that R.C. mentioned an intent to commit suicide several times. R.C. told Dr. O'Neill that he could "commit suicide at will." RP (July 16, 2014) at 26. He also admitted to Dr. O'Neill that he made "ad hoc" nooses in the past. RP (July 16, 2014) at 25-26. Dr. O'Neill believed R.C.'s condition was so severe that he could not recognize he needed treatment:

| [THE STATE]: | How would you characterize [R.C.'s] insight into his need for treatment? |
|---|---|
| [DR. O'NEILL]: | Nonexistent. |
| [THE STATE]: | And what treatment are you recommending for him at this time? |
| [DR. O'NEILL]: | Most restrictive. |
| [THE STATE]: | Why aren't you recommending a lesser? |
| [DR. O'NEILL]: | Because he even admitted he took himself off his medication, shows no insight into the need for medication . . . he's not in a place where he can actually follow through with the treatment at this point. And he is just not stable enough to be able to manage his own treatment or not get into harm at this point. |

RP (July 16, 2014) at 29.

On July 15, 2014, the State filed a petition under chapter 71.05 RCW to commit R.C. for 14 days of involuntary treatment in a secure facility. R.C.'s counsel prepared a motion to dismiss the 14-day petition on the grounds that the State violated the deadline under RCW 71.053.153(4). On July 15, 2014, RCW 71.05.15(3) provided that "Within twelve hours of their arrival, the designated mental health professional must determine whether the individual meets detention criteria." See LAWS OF 2011, ch. 305 § 8,

formerly RCW 71.05.153(3) (emphasis added).[1] The trial court struck R.C.'s motion to

dismiss the 14-day petition, however, because counsel failed to timely serve the motion.

Following a hearing, the court concluded that R.C. suffered from a mental

disorder with a substantial, adverse effect on his cognitive and volitional functions. The

court further concluded that R.C. presented a substantial risk of harm to the property of

others. Accordingly, the court granted the State's petition and ordered that R.C. be

committed for 14 days of treatment. R.C. appeals.

## ANALYSIS

### Mootness

The State argues that we should decline to review R.C.'s appeal because the

commitment period under the challenged order expired and thus his appeal is moot.

But even though R.C. is no longer detained, collateral consequences flow from that

detention. Therefore, his appeal is not moot and we address it on the merits.

Generally, we will dismiss an appeal as moot when it presents merely academic

questions and where this court can no longer provide any effective relief. In re Cross,

99 Wn.2d 373, 376-77, 662 P.2d 828 (1983). However, "an individual's release from

detention does not render an appeal moot where collateral consequences flow from the

determination authorizing such detention." In re Det. of M.K., 168 Wn. App. 621, 626,

279 P.3d 897 (2012). In M.K., the court rejected an identical mootness argument

---

[1] The statute was amended in May 2015 and now provides: "Within twelve hours of notice of the need for evaluation, not counting time periods prior to medical clearance, the designated mental health professional must determine whether the individual meets detention criteria." RCW 71.05.153(4) (emphasis added).

because the respondent's history of commitments could affect future civil commitment evaluations:

> In the case of civil commitments under chapter 71.05 RCW, the trial court is directed to consider, in part, a history of recent prior civil commitments, thus, each order of commitment entered up to three years before the current commitment hearing becomes a part of the evidence against a person seeking denial of a petition for commitment . . . Accordingly, each commitment order has a collateral consequence in subsequent petitions and hearings, allowing us to render relief if we hold that the detention under a civil commitment order was not warranted.

M.K., 168 Wn. App. at 626. The same reasoning applies here. Although R.C. is no longer in detention, the trial court's order committing him to 14 days of involuntary treatment may be considered in a future commitment proceeding. We therefore can render effective relief if we conclude that the trial court erred when it granted the State's petition.

Further, we disagree with the State's contention that any collateral consequences flowing from this detention are minimal because it is not R.C.'s first involuntary commitment. Like R.C., the appellant in M.K. also challenged one of several involuntary commitment orders, and the court nevertheless agreed that his appeal was not moot. Because "each commitment order has a collateral consequence," whether R.C. has other prior involuntary commitments is irrelevant. M.K., 168 Wn. App. at 626. We therefore address R.C.'s appeal on the merits.

Ineffective Assistance of Counsel

R.C. argues that his trial counsel's ineffective assistance warrants reversal of the commitment order. He claims that trial counsel was deficient when she failed to timely serve a motion to dismiss the State's petition for 14-day involuntary treatment and that

-5-

this failure prejudiced him. We conclude that, R.C. cannot show that his attorney's alleged deficient performance prejudiced him.

A respondent in chapter 71.05 RCW proceedings has the right to effective assistance of counsel. In re Det. of T.A.H.-L., 123 Wn. App. 172, 179, 97 P.3d 767 (2004). To determine whether counsel was ineffective, we apply the same test articulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "To prevail on a claim of ineffective assistance of counsel, counsel's representation must have been deficient, and the deficient representation must have prejudiced the defendant." State v. Aho, 137 Wn.2d 736, 745, 975 P.2d 512 (1999); Strickland 466 U.S. at 687. "To establish ineffective representation, the defendant must show that counsel's performance fell below an objective standard of reasonableness. To establish prejudice, a defendant must show that but for counsel's performance, the result would have been different." State v. McNeal, 145 Wn.2d 352, 362, 37 P.3d 280 (2002) (citation omitted). Failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim. Strickland, 466 U.S. at 700.

Even if we assume, without deciding, that counsel's performance was deficient, R.C. cannot show prejudice. To prove prejudice under these circumstances, R.C. must show a reasonable probability that the trial court would have granted his motion to dismiss. State v. Sutherby, 165 Wn. 2d 870, 884, 204 P.3d 916 (2009). R.C. argues that dismissal was required because he was held at UWMC for over 12 hours before a designated mental health professional (DMHP) determined he satisfied detention criteria. See former RCW 71.05.153(3) ("Within twelve hours of arrival, the designated

-6-

mental health professional must determine whether the individual meets detention criteria"). We disagree.

Dismissal in this case would be an inappropriate remedy and contrary to the underlying purpose of the Involuntary Treatment Act (ITA). In the unique context of commitment proceedings, there is a presumption in favor of deciding issues on the merits. In re Det. of G.V., 124 Wn.2d 288, 296, 877 P.2d 680 (1994). "This presumption furthers both the public and private interests because the mental and physical well-being of individuals as well as public safety may be implicated by the decision to release an individual and discontinue his or her treatment." G.V., 124 Wn.2d at 296. Due to these important policy concerns, our Supreme Court has held that dismissal of a commitment petition cannot depend on the inherently unpredictable nature of mental health proceedings:

> [T]here are numerous ways in which the calendar's time restraints are buffeted by the mental instability of the individuals appearing before the court. By its very nature, the calendar is unpredictable. It is easy to visualize a circumstance where a single disruptive patient could cause a significant delay in the hearing process
>
> . . .
>
> There are simply too many variables affecting the calendar . . . to ensure that otherwise valid and factually supported petitions will not be dismissed solely because of the unpredictability of the proceedings.

In re Swanson, 115 Wn.2d 21, 29-30, 804 P.2d 1 (1990). In light of this unpredictability, the Swanson court stated that deciding a commitment petition on the merits despite some delay would properly effectuate the legislative intent underlying the statute and avoid the absurd results that may occur from strict application of the statute's timeliness requirements:

> If Harborview had <u>totally disregarded the requirements of the statute</u> or had failed to establish legal grounds for Swanson's commitment, certainly dismissal would have been proper. Indeed, it would have been required. However, <u>if the intent of the statute is to be fulfilled and absurd results are to be avoided, dismissal cannot turn on the vagaries of scheduling,</u> especially in these unpredictable and sensitive proceedings.

<u>Swanson</u>, 115 Wn.2d at 31 (emphasis added). The court emphasized that this conclusion "rests upon, and is guided by, the stated intent of the civil commitment statute." <u>Swanson</u>, 115 Wn.2d at 31. Indeed, the Legislature recently amended RCW 71.05.153 to reflect the <u>Swanson</u> court's reasoning:

> Dismissal of a commitment petition is not the appropriate remedy for a violation of the timeliness requirements of this section based on the intent of this chapter under RCW 71.05.010 except in the few cases where the facility staff or designated mental health professional has totally disregarded the requirements of this section.

RCW 71.05.153(5).[2] This amendment codifies the Supreme Court's decision in <u>Swanson</u>—the legislature intended that a failure to strictly comply with timeliness requirements in the civil commitment context would only warrant dismissal in rare circumstances. <u>See</u> <u>Swanson</u>, 115 Wn.2d at 29 ("it is the intent of the legislature that chapter 71.05 RCW . . . be <u>carefully construed</u> to accomplish the purposes stated in RCW 71.05.010 and hereby reaffirmed." (quoting RCW 71.05.015) (emphasis added)). Thus, a respondent must also show a complete disregard for the statute's requirements. <u>Swanson</u>, 115 Wn.2d at 31.

---

[2] We recognize that this section of the statute was added earlier this year. <u>See</u> LAWS OF 2015, ch. 269 § 6. The trial court would not have had the benefit of this provision when it considered R.C.'s motion to dismiss, had the motion been timely served. Regardless, the subsection does not articulate a new rule. It is merely a logical extension of the rule articulated in <u>Swanson</u>. <u>See</u> <u>Swanson</u>, 115 Wn.2d at 31.

Even if R.C.'s counsel had timely served the motion to dismiss, the State's violation of the 12-hour requirement would warrant dismissal only if R.C. could show that UWMC completely disregarded the requirements of the statute. Swanson, 115 Wn.2d at 31. R.C. has not made such a showing. Due to the unpredictable nature of mental healthcare, hospital staff face many of the same delays as courts. See, e.g., In re Det. of C.W., 147 Wn.2d 259, 272, 53 P.3d 979 (2002) (Recognizing that the statute "requires several events to occur before the hospital staff may refer a person to the CDMHP."). The record shows that R.C.'s initial evaluation at UWMC occurred at 8:30 p.m. on July 10. He was sent to NAVOS around 10:10 a.m. on July 11 for a 72-hour observation period, approximately 13 hours and 40 minutes after arriving at UWMC. However, though he arrived at UWMC at 8:30 p.m., the record shows he was not medically cleared until 11:10 p.m. Further, he was not referred to a Designated Mental Health Professional (DMHP)—the individual who must make a detention determination under RCW 71.05.153—until 12:51 a.m., July 11. Therefore, the DMHP could not even begin to make a determination regarding R.C.'s eligibility for detention until four hours after his arrival. The record shows that hospital staff acted in good faith. Further, we note that R.C. went to UWMC voluntarily. In fact, he told Officer Gonzalves that he wanted to speak to someone about his medication and that he had a "follow up appointment" on July 10, the same day R.C. spoke with Officer Gonzalves. RP (July 16, 2014) at 9. It was only after R.C. stated he wanted to speak to someone that Officer Gonzalves offered to take him to UWMC. Under these circumstances, dismissing the State's commitment petition would be inconsistent with the legislative intent underlying the ITA as articulated in Swanson. Swanson, 115 Wn.2d at 31.

The Trial Court's Findings of Fact and Conclusions of Law

R.C. challenges the trial court's factual findings and legal conclusions. However, other than this assignment of error, R.C. presents no argument explaining how the trial court erred when it entered these findings and conclusions. Typically, we do not consider inadequately briefed arguments. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011).

But even considering this assignment of error, substantial evidence supports the trial court's factual findings and the findings support its legal conclusions. When a trial court has weighed the evidence, our review is limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law. In re LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986). Substantial evidence is "evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." Holland v. Boeing Co., 90 Wn.2d 384, 390, 583 P.2d 621 (1978).

Here, the trial court found (1) that R.C. posed a likelihood of serious harm to the property of others, (2) that R.C. was gravely disabled, and (3) that a less restrictive treatment environment was not in R.C.'s best interests. Substantial evidence supports these findings.

First, Dr. O'Neill testified at length about R.C.'s aggressive outbursts, which included multiple instances of damaged property. Second, Substantial evidence supports the trial court's conclusion that R.C. satisfies both definitions of "gravely disabled." "Gravely disabled" is defined as:

"a condition in which a person, as a result of a mental disorder: (a) is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety."

RCW 71.05.020(17). Dr. O'Neill's extensive testimony showed that R.C. could not recognize his need for treatment and that he engaged in dangerous behavior, including manufacturing nooses. Further, Dr. O'Neill testified that R.C.'s severe deterioration in routine functioning manifested as disorganized, tangential, and paranoid statements.[3] She stated that R.C. had poor impulse control, that he was unpredictable, and that he lashed out at hospital staff. Finally, due to R.C.'s inability to recognize his own need for treatment, Dr. O'Neill recommended the most restrictive treatment because R.C. could not manage treatment on his own. This testimony supports the trial court's factual findings.

Further, the trial court's factual findings support its legal conclusion. RCW 71.05.240(3)(a) provides:

---

[3] For example, at the commitment hearing, R.C. testified that he believed he was "an assassin's target," RP (July 16, 2014) at 42, and that he had a role in an international conspiracy occurring in Thailand:

For example, there is what the press dubs a coup in the country of Thailand. This is actually a clandestine born internal defense mission in order to establish an effective resistance in the very likely event that China and/or Russia try to annex their peripheries by first destabilizing them and then attacking them. Thailand is doing, is implementing strategy that me and Mr. Eric Greitens developed together . . . Eric Greitens, the Rhodes Scholar who offered me a Rhodes Scholarship—you know there's a lot of stuff in the world that in order to protect the American people . . . that you don't discuss openly or publicly because it's not prudent. I have an official capacity within the federal executive, and so I'm not at liberty to say exactly what that is. If you don't know about it, you probably aren't supposed to know about it.

RP (July 16, 2014) at 47.

> If the court finds by a preponderance of the evidence that such person, as the result of mental disorder, presents a likelihood of serious harm, or is gravely disabled, and, after considering less restrictive alternatives to involuntary detention and treatment, finds that no such alternatives are in the best interests of such person or others, the court shall order that such person be detained for involuntary treatment not to exceed fourteen days in a facility certified to provide treatment by the department.

RCW 71.05.240(3)(a). Because the trial court found by a preponderance of the evidence that R.C. posed a likelihood of serious harm, that he was gravely disabled, and that a less restrictive alternative would not be in his best interest, the trial court did not err when it granted the State's motion to detain R.C. for 14 days of involuntary treatment. As discussed above, R.C. presents no argument to the contrary.

## CONCLUSION

For the foregoing reasons, we affirm.

WE CONCUR: