# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Detention of

A.C.

No. 82653-1-I

DIVISION ONE

UNPUBLISHED OPINION

APPELWICK, J. — A.C. sought dismissal of her involuntary commitment because the hearing was held one day after her prior commitment order expired. The hearing had been continued from the previous day because the night before the scheduled hearing the hospital administered medication to her after she asserted her right to be unmedicated at the hearing. We affirm.

## FACTS

A.C. lives with schizoaffective disorder and sometimes experiences paranoia and delusions. On March 31, 2021, she was sent to the Olympic Medical Center Emergency Room due to her mental status, which was "delusional [and] grandiose." The designated crisis responder evaluated A.C. and requested that A.C. be detained at an evaluation and treatment facility.

On April 1, 2021, A.C. was detained for 120 hours at Telecare North Sound Evaluation and Treatment Center (North Sound). On April 6, 2021, the superior court found that A.C. was gravely disabled, and that she presented a likelihood of both serious harm to others and substantial damage to property. The court

ordered a 14 day commitment, set to expire on April 21, 2021.[1]  However, to further stabilize A.C., on April 19, 2021, a medical professional at North Sound filed a petition for a 90 day involuntary treatment order..

While in treatment, North Sound administered at least five medications as a drug protocol for A.C.  On April 26, 2021, a day before her hearing was scheduled to occur, A.C. signed a form in which she declined to take medication 24 hours before the hearing.  A social worker at North Sound stated that after a patient signs the form to decline medication 24 hours before a hearing, the medication is still offered to the patient.  If the patient declines the medication, "generally speaking, [a decline] is respected."  Despite her refusal, the nurses administered the medications to A.C. less than 24 hours before the hearing.[2]

At the April 27, 2021 hearing, the State and defense agreed that A.C. was improperly medicated after signing the form declining medication.  The State claimed the medication was given accidentally, and asked for a continuance until the next day, so that A.C. would not be medicated during the hearing.  A.C. argued

---

[1] We note that there was an error in the original order that included a release date 15 days from the commitment date.  However, nobody raised or disputed this specific error.

On April 19, 2021, A.C. signed a form stating that she declined medication 24 hours before a hearing scheduled on April 20, 2021.  The record does not contain evidence of what happened at the April 20 hearing.  However, based on A.C.'s argument at a hearing held on April 27, the doctors thought she might be ready to be released in another week.  We infer from that argument that the April 20 hearing was continued to April 27.

[2] According to a North Sound nurse, a patient's declination may be overridden for emergency or necessity if two providers determine the medication is necessary to treat a mental illness.  But, the override that occurred here was not given for an allowable reason.

2

that she was medicated against her will and asked for the case to be dismissed rather than continued.

The commissioner agreed with the State and continued the hearing until the next day. When making the decision, the commissioner looked to the intent and purpose of the involuntary treatment act (ITA), chapter 71.05 RCW. The commissioner stated,

> The intent and purpose is to provide safety in the community, take care of a mentally ill person, and provide for those who are unable to care for themselves . . . . Although it is involuntary commitment, it is a significant deprivation of liberty. You have to balance that against the interests of the State and addressing issues, and in this case, I am finding that the failure to comply with just the, that notice in this particular incidence is outweighed by the State's interest in addressing these issues.

The commissioner also stated that deciding on the merits whether an additional 90 day commitment is warranted is more important than the policy considerations of the statutes. The commissioner informed the State that A.C. should not be medicated before the continued hearing the next day.

The following day, on April 28, 2021, the commissioner ordered A.C. to 90 days of intensive inpatient treatment at North Sound. A.C. appeals the denial of her motion to dismiss and the order of continuance.

## DISCUSSION

The ITA aims to protect the health and safety of those suffering from behavioral health disorders and to protect public safety. RCW 71.05.010(1)(a). Under the ITA, if a person is a serious harm to themselves or others, or is in danger due to being gravely disabled, they can be taken into emergency custody for no

3

more than 120 hours.[3] RCW 71.05.153(1). A person detained for a 120 hour evaluation can then be further committed for 14 days of involuntary intensive treatment or 90 days of less restrictive treatment, following a petition and hearing. RCW 71.05.230, .240(1). If more treatment is needed after the 14 day period of intensive treatment, another hearing can be held to commit the person for 90 or 180 days, if they have harmed themselves, others, or property, or are gravely disabled. RCW 71.05.280(1), (4), .320. In a hearing for involuntary commitment, a court can continue a proceeding for good cause. RCW 71.05.236(1).

A continuance is allowed in commitment cases if the respondent expressly consents and there is a showing of good cause. RCW 71.05.236(1)(a). A continuance can also be allowed if it is "required in the proper administration of justice and the respondent will not be substantially prejudiced in the presentation of the respondent's case." Id. at (b). Decisions to grant a motion for a continuance are reviewed under an abuse of discretion. In re Det. of G.V., 124 Wn.2d 288, 295, 877 P.2d 680 (1994).

An abuse of discretion occurs if the decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" In re Schuoler, 106 Wn.2d 500, 512, 723 P.2d 1103 (1986) (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). "'Whether this discretion is based on untenable grounds, or is manifestly unreasonable, or is arbitrarily exercised,

---

[3] Formerly, this statute could only commit a person for 72 hours instead of 120 hours. In re Det. of Swanson, 115 Wn.2d 21, 26, 804 P.2d 1 (1990) (citing former RCW 71.05.150(2) (1984) (LAWS OF 2007, ch. 375, §§ 7, 8 (deleting subsection language from RCW 71.050.150 and adding section RCW 71.05.153); LAWS OF 2020, ch. 302, § 16 (changing to 120 hour hold))).

depends upon the comparative and compelling public or private interests of those affected by the order or decision and the comparative weight of the reasons for and against the decision one way or the other.'" Id. (quoting Carroll, 79 Wn.2d at 26).

Patients possess a significant liberty interest under the due process clause of the Fourteenth Amendment to avoid unwanted administration of antipsychotic drugs. In re Det. of L.K., 14 Wn. App. 2d 542, 547-48, 471 P.3d 975 (2020). They generally have the right to refuse psychiatric medication 24 hours before a trial or hearing but may not refuse other prescribed medication or emergency lifesaving treatment.[4]  RCW 71.05.210(1)(b).

A.C. argues that "forced administration of antipsychotic drugs that made A.C. unable to participate in her scheduled commitment hearing was a total disregard of A.C.'s rights under RCW 71.05.210(1)(b)."  When a hospital force medicates patients before a hearing, forced medication alone does not require dismissal of the case. In re Det. of G.V., 124 Wn.2d at 293-94.

In G.V., one of the patients in a consolidated case was inadvertently medicated before a hearing, and the commissioner dismissed the case. 124 Wn.2d at 293-94. This dismissal was an abuse of discretion, as the statute

---

[4] Certain state interests compel overriding a patient's objection to medical treatment "including the preservation of life, the protection of interests of innocent third parties, the prevention of suicide, and the maintenance of the ethical integrity of the medical profession." L.K., 14 Wn. App. 2d at 548.  During the hearing, the State did not argue that A.C. was medicated due to preserving her life, protecting her interests, preventing suicide, or maintaining professional integrity.  Instead, the State conceded that the medication given to A.C. was an "accident of . . . some sort."

allowing a patient to refuse medication did not require dismissal, and the court considered the public and private interests and the Schuoler test when reviewing the abuse of discretion. See id. at 296, 299. The public and private interests look to "the mental and physical well-being of individuals as well as public safety," as both may be implicated by a patient's release. Id. at 296. The Schuoler test asks whether the discretion to deny a continuance was manifestly unreasonable, or exercised on untenable grounds, which also weighs the private and public interests of those affected by the order. 106 Wn.2d at 512.

In G.V., the court found that dismissal was improper.[5] 124 Wn.2d at 299. It found improper dismissal because time remained on the sentence, the fact that the patient was gravely disabled, the merits of the petition, the presumption of deciding these cases on the merits, and the purpose of the ITA. Id. Because inadvertently medicating a patient alone does not require dismissal of a petition and because dismissal is not part of the statute in question, dismissal also would not be required following A.C.'s inadvertent medication.

A.C. argues that a continuance was not proper in her case. She argues that G.V. is not controlling because A.C.'s commitment period had expired, while G.V. does not consider commitments that had not yet expired. She argues that dismissal is required because her commitment period had expired, and she was forced to choose between her right to proceed without medication and her right to

---

[5] The court also stated, "Our holding here is also limited to the facts before us in this case and we do not decide whether a single one of the reasons described above would support a finding that the Commissioner abused his discretion." G.V., 124 Wn.2d at 299.

not be detained beyond the statutory limits. A.C. compares her situation to the one in Swanson, which held that former RCW 71.05.150(2) (1984) and former RCW 71.05.210 (1989) required that a person needed to be released at the end of a 72 hour commitment. In re Det. of Swanson, 115 Wn.2d 21, 25-26, 804 P.2d 1 (1990) (citing former RCW 71.05.210 (1989) ("A person who has been detained for seventy-two hours shall no later than the end of such period be released, unless referred for further care on a voluntary basis, or detained pursuant to court order for further treatment as provided in this chapter.")).

Here, RCW 71.05.280, the statute governing 14 day commitments, does not contain the mandatory release language found in the former statute in Swanson. And, RCW 71.05.236, another statute in the ITA statutory scheme, expressly sets forth the provisions for continuances in commitment proceedings. This shows the legislature contemplated that continuances that extend a 14 day commitment period can occur. The continuance of A.C.'s commitment does not require dismissal.

A.C. next contends that the hospital violated the intent of the ITA by force medicating her. She argues that the hospital's treatment of her was a total disregard of the statute RCW 71.05.210(1)(b). She argues that a total disregard of the statute requires dismissal.

Courts use the total disregard standard to assess whether a trial court has abused its discretion in an ITA case. In re Det. of C.V., 5 Wn. App. 2d 814, 823, 428 P.3d 407 (2018). The total disregard standard's concern is that "a person with mental health needs serious enough to require involuntary treatment should not

7

be released merely because some statutory requirements have not been satisfied."

Id.

"Dismissal of an involuntary treatment petition and release of the person subject to the petition is not often the proper remedy because of the importance of providing treatment to those requiring it." Id. at 822. In determining whether a case should be dismissed, courts can look to the merits of the petition, the intent of the statute, and whether the State had a total disregard of the requirements of the statute. In re Det. of C.W., 147 Wn.2d 259, 281, 53 P.3d 979 (2002). Courts also look to the intent of the statute, "'to determine and give effect to the intent of the legislature.'" C.V., 5 Wn. App. 2d at 818 (quoting State v. Evans, 177 Wn.2d 186, 192, 298 P.3d 724 (2013)).

The ITA states various reasons for the legislative intent of the statute. RCW 71.05.010. Included are:

> (a) To protect the health and safety of persons suffering from behavioral health disorders and to protect public safety through use of the parens patriae and police powers of the state;
>
> (b) To prevent inappropriate, indefinite commitment of persons living with behavioral health disorders and to eliminate legal disabilities that arise from such commitment;
>
> (c) To provide prompt evaluation and timely and appropriate treatment of persons with serious behavioral health disorders;
>
> (d) To safeguard individual rights;
>
> (e) To provide continuity of care for persons with serious behavioral health disorders;
>
> (f) To encourage the full use of all existing agencies, professional personnel, and public funds to prevent duplication of services and unnecessary expenditures; and

(g) To encourage, whenever appropriate, that services be provided within the community.

RCW 71.05.010(1).

At the hearing, the commissioner examined the competing factors and determined that, rather than dismissing the case due to the failure of the 24 hour medication notice, deciding the case on the merits "would be more important than the policy considerations of the statutes." The commissioner also considered during the hearing whether a continuance would be a total disregard of the statute, and said that the commissioner looked to the intent and purpose of the ITA to determine it was not. In doing so, the commissioner granted the continuance after weighing the merits of the case and the safety of A.C., practicing discretion in not releasing A.C. merely because the strict statutory time requirement had not been met. Granting a one day continuance was not an abuse of discretion.

We affirm.

_Appelwick, J._

WE CONCUR:

_Coburn, J._                    _Verellen, J._